IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, an Illinois corporation; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation, | ) ) ) ) ) ) | CIVIL. NO. 11-00515 SOM/KSC<br><br>ORDER (1) GRANTING IN RELEVANT PART COUNTERCLAIM DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; |
| Plaintiffs, | ) ) ) | (2) GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM FILED OCTOBER 24, 2011, AND GIVING NORDIC LEAVE TO AMEND IN CERTAIN RESPECTS; |
| vs. | ) ) ) ) | |
| NORDIC PCL CONSTRUCTION, INC., f/k/a NORDIC CONSTRUCTION, LTD., a Hawaii corporation, | ) ) ) ) ) | (3) DENYING COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE COUNTERCLAIM FILED OCTOBER 24, 2011; (4) DENYING THIRD-PARTY |
| Defendant. | ) ) ) | DEFENDANT MARSH USA, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS |
| NORDIC PCL CONSTRUCTION, INC., f/k/a NORDIC CONSTRUCTION LTD., a Hawaii corporation, | ) ) ) ) ) ) | IN FAVOR OF PENDING STATE ACTION; (5) DENYING DEFENDANT AND THIRD-PARTY PLAINTIFF NORDIC CONSTRUCTION, INC., F/K/A NORDIC CONSTRUCTION |
| Defendant and Third-Party Plaintiff, | ) ) ) ) | LTD.'S SUBSTANTIVE JOINDER TO THIRD-PARTY DEFENDANT MARSH USA, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY |
| vs. | ) ) ) | PROCEEDINGS IN FAVOR OF PENDING STATE ACTION; AND |
| MARSH USA, INC., | ) ) | (6) GRANTING THIRD-PARTY DEFENDANT MARSH USA, INC.'S |
| Third-Party Defendant. | ) ) ) ) | MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS V AND VI OF DEFENDANT/THIRD-PARTY PLAINTIFF NORDIC PLC |
| | ) ) ) ) ) | CONSTRUCTION, INC.'S THIRD-PARTY COMPLAINT FILED OCTOBER 24, 2011 |

ORDER (1) GRANTING IN RELEVANT PART COUNTERCLAIM DEFENDANTS'
REQUEST FOR JUDICIAL NOTICE; (2) GRANTING IN PART AND DENYING IN
PART COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM
FILED OCTOBER 24, 2011, AND GIVING NORDIC LEAVE TO AMEND IN
CERTAIN RESPECTS; (3) DENYING COUNTERCLAIM DEFENDANTS' MOTION TO
STRIKE PORTIONS OF THE COUNTERCLAIM FILED OCTOBER 24, 2011; (4)
DENYING THIRD-PARTY DEFENDANT MARSH USA, INC.'S MOTION TO DISMISS
OR, IN THE ALTERNATIVE, STAY PROCEEDINGS IN FAVOR OF PENDING
STATE ACTION; (5) DENYING DEFENDANT AND THIRD-PARTY PLAINTIFF
NORDIC CONSTRUCTION, INC., F/K/A NORDIC CONSTRUCTION LTD.'S
SUBSTANTIVE JOINDER TO THIRD-PARTY DEFENDANT MARSH USA, INC.'S
MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS IN
FAVOR OF PENDING STATE ACTION; AND (6) GRANTING THIRD-PARTY
DEFENDANT MARSH USA, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS
ON COUNTS V AND VI OF DEFENDANT/THIRD-PARTY PLAINTIFF NORDIC PLC
<u>CONSTRUCTION, INC.'S THIRD-PARTY COMPLAINT FILED OCTOBER 24, 2011</u>

I.      <u>INTRODUCTION.</u>

        This case involves a dispute about whether insurance

benefits are available to a general contractor who built

structures that allegedly have construction defects.  Plaintiffs

Illinois National Insurance Company ("Illinois National") and

National Union Fire Insurance Company of Pittsburgh, PA

("National Union") (collectively, the "Insurers"), commenced this

action for declaratory relief against Defendant Nordic PCL

Construction, Inc., f/k/a Nordic Construction, Ltd. ("Nordic"),

on August 23, 2011.  <u>See</u> Compl., ECF No. 1.  Nordic filed a

Counterclaim against the Insurers, <u>see</u> Countercl., ECF No. 10-1,

and a Third-Party Complaint against Marsh USA, Inc. ("Marsh").

<u>See</u> Third-Party Compl., ECF No. 11.

        The parties are now before the court on numerous

motions: Counterclaim Defendants' Request for Judicial Notice in

Support of Their (1) Motion to Dismiss the Counterclaim and

(2) Motion to Strike Portions of the Counterclaim, ECF No. 16 ("Request for Judicial Notice"); Counterclaim Defendants' Motion to Dismiss Counterclaim Filed October 24, 2011, ECF No. 14 ("Motion to Dismiss Counterclaim"); Counterclaim Defendants' Motion to Strike Portions of the Counterclaim Filed October 24, 2011, ECF No. 15 ("Motion to Strike"); Third-Party Defendant Marsh USA, Inc.'s Motion to Dismiss or, in the Alternative, Stay Proceedings in Favor of Pending State Action, ECF No. 33 ("Marsh's Motion To Dismiss Or Stay"); Defendant and Third-Party Plaintiff Nordic PCL Construction, Inc., f/k/a Nordic Construction Ltd.'s Substantive Joinder to Third-Party Defendant Marsh USA Inc.'s Motion to Dismiss or, in the Alternative, Stay Proceedings in Favor of Pending State Action, ECF No. 36 ("Nordic's Joinder"); and Third-Party Defendant Marsh USA, Inc.'s Motion for Judgment on the Pleadings on Counts V and VI of Defendant/Third-Party Plaintiff Nordic PCL Construction, Inc.'s Third-Party Complaint, ECF No. 29 ("Marsh's Motion for Judgment on the Pleadings").

The court GRANTS IN RELEVANT PART the Insurers' Request for Judicial Notice to the extent it covers matters relevant to these motions; GRANTS IN PART the Insurers' Motion to Dismiss Counterclaim, but gives Nordic leave to amend the Counterclaim in certain respects; DENIES the Insurers' Motion to Strike; DENIES

3

Marsh's Motion To Dismiss Or Stay and Nordic's Joinder; and GRANTS Marsh's Motion for Judgment on the Pleadings.

II.    <u>BACKGROUND.</u>

This action arises out of alleged construction defects involving two projects on which Nordic acted as the general contractor.  Nordic is a defendant in a pending state court action with respect to one of the projects and says it spent more than $400,000 on repairs with respect to the other project. Nordic tendered the defense of the pending state court action to the Insurers and sought reimbursement of the cost of repairs already performed.  The Insurers responded by filing this action to determine their rights under the insurance policies issued to Nordic.

A.    The Insurance Policies.

1.    The CGL Policy.

In or around 2007, Illinois National issued Commercial General Liability Policy No. GL 161-68-33 (the "CGL Policy") to Nordic.  See CGL Policy, attached as Exhibit "A" to Compl., ECF No. 1-1.  The CGL Policy was effective from May 1, 2007, to May 1, 2008.  Id.  Section I, Coverage A of the CGL Policy "applies to 'bodily injury' and 'property damage' only if: (1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory[.]'"  Id. at 23 (Policy page numbers referred to are at the top of the page, as in "page

4

23 of 64," not at the bottom right). "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Id. at 35. The CGL Policy excludes coverage for "'[b]odily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id. at 24.

### 2.    The Umbrella Policy.

In or around 2007, National Union issued Commercial Umbrella Liability Policy No. BE 5685754 (the "Umbrella Policy") to Nordic. See Umbrella Policy, attached as Exhibit "B" to Compl., ECF No. 1-2. The Umbrella Policy was effective from May 1, 2007, to May 1, 2008. Id. Section I of the Umbrella Policy provides coverage if "the Bodily Injury or Property Damage is caused by an Occurrence that takes place anywhere, and the Bodily Injury or Property Damage occurs during the Policy Period." Id. at 6. "Occurrence" is defined in the Umbrella Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence." Id. at 25. The Umbrella Policy excludes "liability for which the Insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." Id. at 10.

B. **The Alleged Construction Defects.**

1. **Kapahulu Safeway.**

Nordic constructed a grocery store for Safeway, Inc. ("Safeway"), at 900 Kapahulu Avenue in Honolulu, Hawaii. Compl. ¶ 8, ECF No. 1. Nordic's contract, signed in September 2006, required Nordic to build not only the store, but also a 165-space, rooftop parking deck, retail shops, and related improvements. Id. ¶ 10; Countercl. ¶ 5, ECF No. 10-1. The parking deck was to consist of a floating concrete "wearing slab" topped with sealant. Compl. ¶ 10, ECF No. 1.

Shortly after opening for business in 2007, Safeway allegedly had significant leaks. Id. ¶ 11. In January 2008, Safeway allegedly notified Nordic that the leaks had damaged interior fixtures and equipment, that Safeway lost profits during remedial work, and that the "wearing slab" was uneven and cracking. Id.; Countercl. ¶ 14, ECF No. 10-1. In October 2008, Safeway sent Nordic a letter demanding that Nordic repair the parking deck. Id. ¶ 15. Nordic allegedly forwarded the demand letter to AIG Domestic Claims, Inc. ("AIG"), the Insurers' representative. Id. AIG agreed to appoint counsel for Nordic, subject to a reservation of rights. Id. ¶ 16. AIG allegedly followed up with a second letter to Nordic, pointing out that "[t]here are several provisions of the policies that may preclude or limit coverage for this matter," but not explicitly asserting

that the claim did not involve an "occurrence" under the Policies. Id. ¶ 18.

On or around June 22, 2009, Safeway commenced suit, <u>Safeway, Inc. v. Nordic PLC Construction, Inc.</u>, Case No. 09-1-1414-06 (the "Safeway Action"), against Nordic for alleged construction defects in the Circuit Court of the First Circuit, State of Hawaii. Compl. ¶ 12, ECF No. 1. Safeway's complaint alleged breach of contract, breach of the covenant of good faith and fair dealing, negligence, gross negligence, breach of express and implied warranties, unjust enrichment, negligent misrepresentation, intentional misrepresentation, and declaratory relief. Id. Nordic tendered the Safeway Action to the Insurers under the CGL Policy and Umbrella Policy (collectively, "the Policies"). Id. ¶ 13. Illinois National is providing Nordic with a defense in the Safeway Action, and both Illinois National and National Union have reserved their rights under their respective policies. Id. Notwithstanding the provision of a defense, Nordic claims that it is incurring costs and attorney's fees for independent counsel to protect its interests, because "the appointed insurance defense counsel lacks the staff and resources" to manage discovery. Countercl. ¶ 21, ECF No. 10-1.

    2.  <u>Moanalua Shopping Center.</u>

The other project that is the subject of the present lawsuit is Moanalua Shopping Center, a strip mall and two-story

office building at 930 Valkenburg Street in Honolulu, Hawaii.
Compl. ¶ 8, ECF No. 1.  Pursuant to a contract dated July 18,
2005, MSC, LLC ("MSC"), hired Nordic to construct the Moanalua
Shopping Center.  Id. ¶ 15.  Nordic finished construction in or
around September 2006, but in or around September 2009, the
United States Department of the Navy, one of the tenants at the
shopping center, complained about a number of construction
defects.  Id. ¶ 16.

MSC informed Nordic of the Navy's complaints and asked
Nordic to remedy the alleged defects (the "Moanalua Claims").
Id. ¶ 17; Countercl. ¶¶ 24-25, ECF No. 10-1.  Nordic allegedly
tendered the Navy's complaints to the Insurers' agents and
repaired the Moanalua Shopping Center.  Id. ¶ 27.  In or around
September 2010, the Insurers, through their agents, promised to
investigate the claims and any potential coverage, while
reserving their rights.  Id. ¶¶ 28-29.  Nordic alleges that the
Navy and MSC are satisfied with Nordic's repairs, but that Nordic
has not been reimbursed by the Insurers for repair costs totaling
over $460,000.  Id. ¶ 31.  There is no pending construction
defect lawsuit regarding the Moanalua Claims.  Id. ¶ 30.

C.  Procedural History.

The Insurers commenced this declaratory action in this
court on August 23, 2011.  See Compl., ECF No. 1.  The Complaint
asserts two claims, one seeking a declaration that the Insurers

8

have no duty to provide a defense or indemnification regarding the Safeway Action, the other seeking such a declaration regarding the Moanalua Claims.  <u>Id.</u>

Along with its Answer, Nordic filed a Counterclaim against the Insurers.  <u>See</u> Countercl., ECF No. 10-1.  The Counterclaim asserts breach of contract, breach of the covenant of good faith and fair dealing, misrepresentations and omissions of material fact, and bad faith, and seeks declaratory relief against the Insurers.  <u>Id.</u>

Nordic also filed a Third-Party Complaint against Marsh, the broker that had procured the Policies from the Insurers for Nordic.  <u>See</u> Third-Party Compl., ECF No. 11.  Nordic alleges that it reasonably believed that the Policies would provide completed operations insurance coverage for the types of construction defects alleged in the Safeway Action and Moanalua Claims.  <u>Id.</u> ¶ 8.  The Third-Party Complaint asserts breach of contract, negligence, promissory estoppel, breach of fiduciary duties, implied indemnity, and contribution and equitable subrogation.

III.     <u>THE INSURERS' REQUEST FOR JUDICIAL NOTICE.</u>

The court begins by addressing the Insurers' request that the court take judicial notice of the Policies at issue in support of their Motion to Dismiss Counterclaim and Motion to Strike.

Rule 201 of the Federal Rules of Evidence "permits a court to take judicial notice of adjudicative facts not subject to reasonable dispute." United States v. Chapel, 41 F.3d 1338, 1342 (9th Cir. 1994). "Adjudicative facts are simply the facts of the particular case." Advisory Committee Notes to Fed. R. Evid. 201. However, "Judicial notice of adjudicative facts must be approached cautiously because it dispenses 'with traditional methods of proof' and removes the fact noticed from the province of the jury." United States v. Jaimes, 297 F. Supp. 2d 1254, 1256 (D. Haw. 2003) (citing Fed. R. Evid. 201, advisory committee notes to subdivision (b)). Accordingly, judicial notice is appropriate only when the matter is established "beyond reasonable controversy," Lee v. City of L.A., 250 F.3d 668, 690 (9th Cir. 2001), or is a fact "beyond reasonable dispute," Jaimes, 297 F. Supp. 2d at 1256.

The Insurers ask the court to take judicial notice of the two insurance policies at issue in this case. The Policies were attached to the request for judicial notice, as well as to the Complaint, but were not accompanied by a declaration attesting to their authenticity.

Nordic points out that it denied the authenticity of the Policies in its Answer, which stated that the documents "speak for themselves." Nordic also argues that the Policies it received from Marsh differ from those presented by the Insurers.

In a declaration, Kenneth Spence, a Nordic official who attests to the differences in the Policies, states that the CGL Policy in his possession differs from the Policies offered by the Insurers:

> 6.   . . . . Among other things, the amount of the policy premium is struck through on the first page of the copy of the purported CGL Policy attached to the Request for Judicial Notice, but not in the copy of the purported CGL Policy provided by Marsh.

> 7.   In addition, both copies of the purported CGL Policy contain a Notice stating that it "does not form a part of your insurance contract" but nevertheless purporting to provide information about the policy.

Decl. of Kenneth Spence ¶¶ 6-7, attached to Request for Judicial Notice, ECF No. 42-1. Spence also states that versions of the Umbrella Policy differ in two ways:

> 9.   . . . The second page of the copy of the purported Umbrella Policy attached to the Request for Judicial Notice does not appear in the copy of the purported Umbrella Policy provided by Marsh.

> 10.   Further, the final page of the copy of the purported Umbrella Policy attached to the Request for Judicial Notice, titled "Violation of Communications or Information Law Exclusion Endorsement," differs from its apparent counterpart at the end of the copy of the purported Umbrella Policy provided by Marsh.

Id. ¶¶ 9-10.

The court grants the Insurers' request for judicial notice of the Policies, but the judicial notice is limited to the portions of the Policies quoted or relied on in the present

order. Nordic challenges the authenticity of the Policies, but the specific differences it identifies are unrelated to the salient issues now before this court. The discrepancies alleged by Nordic fail to create a reasonable dispute regarding the relevant contractual provisions. At most, Spence "question[s] which copy (if either) is a complete, accurate and authentic copy of the [Policies]." Decl. of Kenneth Spence ¶¶ 8, 11, ECF No. 42-1. At the hearing on the present motions, Nordic conceded that none of the identified differences was relevant to any issue before this court. Therefore, with respect to passages construed or relied on by the court, this court takes judicial notice of the Policies, finding those passages not in dispute.

IV.     THE INSURERS' MOTION TO DISMISS COUNTERCLAIM.

The court now turns to the Insurers' Motion to Dismiss Counterclaim. The parties focus the bulk of their arguments on whether the claims in the Safeway Action or the Moanalua Claims involve an "occurrence" as defined in the Policies. For the reasons discussed below, the court grants in part and denies in part the Motion to Dismiss Counterclaim.

A.     Standard.

Under Rule 12(b)(6), a court is generally limited to reviewing the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters

12

outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See <u>Keams v. Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." <u>United States v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. <u>Sprewell</u>, 266 F.3d at 988. Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Id.</u> Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v.</u>

<u>Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, a claimant must make factual allegations sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). <u>Accord</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949.

As the Ninth Circuit has recently stated:

First, to be entitled to the presumption of truth, allegations in a complaint or

14

> counterclaim may not simply recite the
> elements of a cause of action, but must
> contain sufficient allegations of underlying
> facts to give fair notice and to enable the
> opposing party to defend itself effectively.
> Second, the factual allegations that are
> taken as true must plausibly suggest an
> entitlement to relief, such that it is not
> unfair to require the opposing party to be
> subjected to the expense of discovery and
> continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

B.    Breach Of Contract.

The Insurers first argue that Nordic fails to state a

claim for breach of contract in Count I and a claim for

declaratory relief in Count V,[1] because the alleged construction

defects are not "occurrences" as defined by the Intermediate

---

[1] A declaratory relief claim is not cognizable as an
independent cause of action.  That is, it addresses a form of
relief, much like a "claim" for injunctive relief, not an actual
affirmative basis for relief.  Count V is therefore dismissed on
that ground.  See Seattle Audubon Soc'y v. Moseley, 80 F.3d
1401, 1405 (9th Cir. 1996) ("A declaratory judgment offers a
means by which rights and obligations may be adjudicated in cases
brought by any interested party involving an actual controversy
that has not reached a stage at which either party may seek a
coercive remedy and in cases where a party who could sue for
coercive relief has not yet done so.") (citation and quotation
marks omitted).  Because Nordic's declaratory relief claim is
based on allegations already encompassed by its breach of
contract claim, the claim for declaratory relief is duplicative
and adds nothing here.  See, e.g., Ballard v. Chase Bank USA,
N.A., Civ. No. 10-00790 L(POR), 2010 WL 5114952, at *8 (S.D. Cal.
Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls
with [the] other claims.'") (alteration in original, citation
omitted); Mangindin v. Wash. Mut. Bank, 637 F. Supp. 2d 700, 707
(N.D. Cal. 2009) ("A claim for declaratory relief is unnecessary
where an adequate remedy exists under some other cause of
action.").

Court of Appeals ("ICA") in <u>Group Builders, Inc. v. Admiral</u>
<u>Insurance Co.</u>, 123 Haw. 142, 231 P.3d 67 (Ct. App. 2010) ("<u>Group</u>
<u>Builders</u>"), and by the Ninth Circuit in <u>Burlington Insurance Co.</u>
<u>v. Oceanic Design & Construction, Inc.</u>, 383 F.3d 940, 944 (9th
Cir. 2004) ("<u>Burlington</u>").  Bound by the Ninth Circuit's decision
in <u>Burlington</u>, this court agrees with the Insurers that the
underlying damage was not caused by any "occurrence" as defined
in the main coverage provisions of the Policies and therefore is
not covered.

       1.    The Alleged Damage Was Not Caused By An
            <u>"Occurrence" Under The Policies.</u>

The crux of the parties' dispute concerns whether the
alleged construction defects were caused by an "occurrence."  The
language of the CGL Policy and the Umbrella Policy defines an
"occurrence" as an "accident."  The Insurers' position is that
the alleged construction defects are deficiencies in Nordic's
satisfaction of its contractual duties, and that a breach of
contract is not an accident.  Nordic says that the defects arise
out of alleged negligence, which is in the nature of an accident.

To resolve this dispute, which is before this court
based on diversity jurisdiction, the court looks to state law.
<u>See</u> <u>Snead v. Metro. Prop. & Cas. Ins. Co.</u>, 237 F.3d 1080, 1090
(9th Cir. 2001) (stating that federal courts sitting in diversity
apply state substantive law and federal procedural law).  When
interpreting state law, a federal court is bound by the decisions

16

of a state's highest court.  <u>Ariz. Elec. Power Coop. v. Berkeley</u>,

59 F.3d 988, 991 (9th Cir. 1995).  In the absence of such a

decision, a federal court attempts to predict how the highest

state court would decide the issue, using intermediate appellate

court decisions, decisions from other jurisdictions, statutes,

treatises, and restatements as guidance.  <u>Id.</u>  <u>See</u> <u>Burlington</u>,

383 F.3d at 944 ("To the extent this case raises issues of first

impression, our court, sitting in diversity, must use its best

judgment to predict how the Hawaii Supreme Court would decide the

issue." (quotation and brackets omitted)).

Under Hawaii law, general rules of contract

construction apply to the interpretation of insurance contracts.

<u>Dawes v. First Ins. Co. of Haw., Ltd.</u>, 77 Haw. 117, 121, 883 P.2d

38, 42 (1994).  Insurance policies must be read as a whole and

construed in accordance with the plain meaning of their terms,

unless it appears that a different meaning is intended.  <u>See</u> <u>id.</u>

at 131, 883 P.2d at 42; Haw. Rev. Stat. § 431:10-237 ("[e]very

insurance contract shall be construed according to the entirety

of its terms and conditions as set forth in the policy").

Because insurance contracts are contracts of adhesion,

they must be construed liberally in favor of the insured, and any

ambiguities must be resolved against the insurer.  Put another

way, the rule is that policies are to be construed in accordance

with the reasonable expectations of a layperson.  _Dawes_, 77 Haw. at 131, 883 P.2d at 42.

The burden is on the insured to establish coverage under an insurance policy.  _See_ _Sentinel Ins. Co., Ltd. v. First Ins. Co. of Haw., Ltd._, 76 Haw. 277, 291 n.13, 875 P.2d 894, 909 n.13 (1994) (as amended on grant of reconsideration).  The insurer has the burden of establishing the applicability of an exclusion.  _See_ _id._ at 297, 875 P.2d at 914.

The insurer owes the insured a duty to indemnify "for any loss or injury which comes within the coverage provisions of the policy, provided it is not removed from coverage by a policy exclusion."  _Dairy Road Partners v. Island Ins. Co., Ltd._, 92 Haw. 398, 413, 992 P.2d 93, 108 (2000).  The obligation to defend an insured is broader than the duty to indemnify.  The duty to defend arises when there is any potential or possibility for coverage.  _Sentinel_, 76 Haw. at 287, 875 P.2d at 904.

The ICA, the Ninth Circuit, and this court have all previously held that claims that arise from alleged breaches of contract do not involve accidents or "occurrences."  Because the claims asserted against Nordic in the Safeway Action, as well as the Moanalua Claims, arise from Nordic's alleged breach of construction contracts, they are not covered by the Policies.

In _Group Builders_, the ICA considered the definition of "accident" set forth in  _Hawaiian Holiday Macadamia Nut Co., Inc._

18

v. Indus. Indem. Co., 76 Haw. 166, 872 P.2d 230 (1994) ("Hawaiian
Holiday"), and Burlington.  Group Builders, a named insured under
a commercial general liability insurance policy issued by
Admiral, had subcontracted to build a portion of a hotel.  Group
Builders, 123 Haw. at 143, 231 P.3d at 68.  The insurance policy
covered claims alleging "bodily injury" or "property damage" if
"caused by an 'occurrence.'"  Id. at 145, 231 P.3d at 70.  "The
policy define[d] 'occurrence' as 'an accident, including
continuous or repeated exposure to substantially the same general
harmful conditions.'"  Id.

After Group Builders completed the job, the hotel
discovered significant mold growth within the new construction
and sued various contractors, including Group Builders, for
breach of contract, negligence, and negligent misrepresentation,
among other claims.  Id. at 144, 231 P.3d at 69.  Admiral refused
to defend or indemnify Group Builders, and the state circuit
court granted summary judgment to Admiral on the issue.  Id.

The ICA affirmed.  Applying the Hawaii Supreme Court's
definition of "accident," as addressed by the Ninth Circuit in
Burlington, the ICA concluded that the hotel's claims were not
covered.  "In Hawaii," the ICA explained, "an occurrence 'cannot
be the expected or reasonably foreseeable result of the insured's
own intentional acts or omissions.'"  Id. at 147, 231 P.3d at 72
(quoting Burlington, 383 F.3d at 948).  If Group Builders

"breached its contractual duty by constructing a substandard home, then facing a lawsuit for that breach is a reasonably foreseeable result." Id. at 147, 231 P.3d at 72 (quoting Burlington, 383 F.3d at 948). The ICA said that the cases cited by the plaintiffs as allowing coverage in other jurisdictions constituted the minority position on this issue. Id. at 148, 231 P.3d at 73. The ICA held not only that "breach of contract claims based on allegations of shoddy performance are not covered under CGL policies," but also that "tort-based claims, derivative of these breach of contract claims, are also not covered under CGL policies." Id. at 148-49, 231 P.3d at 73-74. Accord WDC Venture v. Hartford Accident & Indem. Co., 938 F. Supp. 671, 679 (D. Haw. 1996) (explaining that "[t]here is simply no reason to expect . . . a comprehensive liability policy which has, as its genesis, the purpose of protecting an individual or entity from liability for essentially accidental injury . . . or property damage" to cover "contractual-based allegations").

The ICA's reliance in Group Builders on the Ninth Circuit's decision in Burlington was express and heavy. Burlington involved a contractor that brought suit against homeowners for whom it had constructed a single-family residence. 383 F.3d at 943. The homeowners filed a counterclaim for, among other things, breach of contract, alleging that the contractor had improperly designed or constructed the foundation of the

residence, resulting in damage to the property.  Id.  The

insurer, Burlington, agreed to defend the contractor under a

reservation of rights, then filed an action seeking a ruling that

the insurance policy did not cover the homeowners' counterclaim.

Id.  Like the Policies before this court, the insurance policy in

Burlington defined "occurrence" as "an accident, including

continuous or repeated exposure to substantially the same general

harmful conditions."  Id.

> The Ninth Circuit, applying Hawaii law, stated:
>
> The counterclaim then alleges that Oceanic
> breached its contractual duty by constructing
> a residence "substantially inferior to the
> standard of care and quality which had been
> agreed."  Other than a breach of that
> contractual duty, the facts in this case do
> not reflect a breach of an independent duty
> that would otherwise support a negligence
> claim.  In Hawaii, an occurrence "cannot be
> the expected or reasonably foreseeable result
> of the insured's own intentional acts or
> omissions."  Hawaiian Holiday Macadamia Nut,
> 872 P.2d at 234 (citing AIG Hawaii Ins. Co.,
> 851 P.2d at 329).  If Oceanic breached its
> contractual duty by constructing a
> substandard home, then facing a lawsuit for
> that breach is a reasonably foreseeable
> result.

Id.  The Ninth Circuit also cited several District of Hawaii

cases for the proposition that contract-based tort claims are not

within the scope of CGL policies under Hawaii law.  Id. at 949.

See CIM Ins. Corp. v. Midpac Auto Center, Inc., 108 F. Supp. 2d

1092, 1099-1100 (D. Haw. 2000) (the insurer had no duty to defend

claims for breach of contract because they were either based on

21

the contract or premised on the existence of the contractual relationship between the parties); CIM Ins. Corp. v. Masamitsu, 74 F. Supp. 2d 975, 986 (D. Haw. 1999) (claims of fraud, misrepresentation, promissory estoppel, and breach of contract did not trigger a duty to defend as they were contract or contract-based claims and not within the scope of coverage); WDC Venture, 938 F. Supp. at 677-79 ("Since [the insured] seeks recovery here for tort and contract claims that arise from the contractual relationship, the court finds that the underlying lawsuits are outside the scope of policy coverage in this case.").

In the present case, the Insurers argue that the Policies' definition of "occurrence" excludes construction defects that are not the result of an "accident." They argue that, because the claims in the underlying litigation are contract-based, the Insurers, under Burlington and Group Builders, have no duty to defend or indemnify. Nordic and Marsh, conversely, take the position that the Hawaii Supreme Court's decisions in Sentinel, Hurtig v. Terminix Wood Treating & Contracting, Co., 67 Haw. 480, 692 P.2d 1153 (1984), and Sturla, Inc. v. Fireman's Fund Insurance Co., 67 Haw. 203, 684 P.2d 960 (1984), are controlling, and that Group Builders and Burlington ignored those precedents.

The position advanced by Nordic and Marsh runs afoul of hierarchy and chronology.  With respect to hierarchy, this court is clearly bound by Burlington, in which the Ninth Circuit construed Hawaii law as not providing for insurance coverage for contract-related claims.  While Nordic and Marsh say the Ninth Circuit misconstrued Hawaii law, it is futile for them to seek this court's departure from the Ninth Circuit's analysis.  The "law of the circuit" rule is "the rule that a published decision of this court constitutes binding authority which 'must be followed unless and until overruled by a body competent to do so.'"  Gonzalez v. Arizona, Nos. 08-17094, 08-17115, 2012 WL 1293149, at *2 n.4 (9th Cir. April 17, 2012) (en banc) (quoting Hart v. Massanari, 266 F.3d 1155, 1170 (9th Cir. 2001)).  This court is obligated to follow the Ninth Circuit's decision in Burlington and may not choose to ignore the law of the circuit.

With respect to chronology, Nordic and Marsh are relying on Hawaii Supreme Court cases that preceded Burlington and Group Builders.  Thus, it is fair for this court to assume that the Ninth Circuit and the ICA took those Hawaii Supreme Court cases into account.

Only one of the Hawaii Supreme Court cases Nordic and Marsh rely on was decided after Burlington.  In Tri-S Corporation v. Western World Insurance Company, 110 Haw. 473, 135 P.3d 82 (2006), the insured and its executive officer brought suit

23

against their insurer for failure to defend or indemnify under the CGL policy. The underlying action involved the death of a construction worker from "electrical discharge from high voltage power lines." Id. at 478, 135 P.3d at 87. The decedent's estate filed suit against the executive officer, arguing that he had wilfully and wantonly breached the duty to provide a safe workplace. The insurer refused to provide a defense, arguing that the CGL policy did not cover the wrongful death. The circuit court found in favor of the insureds, and the insurer appealed.

On appeal, the Hawaii Supreme Court was faced with, among other things, determining whether the conduct alleged in the underlying suit constituted an "occurrence" within the meaning of the policy. Holding that the insureds had established at least the potential of coverage, the court agreed with the trial court that the insurer's duty to defend had been triggered. The court said that the term "occurrence" did not exclude wilful and wanton conduct. The court then focused on language providing that bodily injury "expected or intended" from the standpoint of the insured was excluded from coverage. See id. at 493, 135 P.3d at 102.

Thus, although Tri-S did examine whether a claim involved an "occurrence," that was not the main focus of that

case which, in any event, concerned wilful and wanton conduct, not a breach of contract.

In the present case, there is no allegation of wilful or wanton misconduct by Nordic. Moreover, <u>Tri-S</u> involved wrongful death, not a matter analogous to Nordic's alleged breach of the construction contract. <u>Tri-S</u> by no means undercuts the analysis in <u>Burlington</u> as to whether a construction defect is an "occurrence" under a CGL policy.

The Ninth Circuit's decision in <u>Burlington</u> could be said to have been validated by the ICA in <u>Group Builders</u>. While the ICA is clearly not the Hawaii Supreme Court, it bears noting that, in the seven and a half years since <u>Burlington</u> was decided, neither the Hawaii Supreme Court nor the ICA has criticized that decision. This court therefore applies <u>Burlington</u> in ruling that the Safeway Action and the Moanalua Claims arise from Nordic's contractual relationships, not "occurrences."

Nordic and Marsh argue that House Bill No. 924, passed by the legislature as Act 83 shortly after the ICA's decision in <u>Group Builders</u>, legislatively overturned <u>Group Builders</u>. The text of the bill proclaims:

> The legislature further finds that the 2010 decision of the Hawaii Intermediate Court of Appeals in <u>Group Builders, Inc. v. Admiral Ins. Co.</u>, 231 P.3d 67 (Haw. Ct. App. 2010), creates uncertainty in the construction industry, and invalidates insurance coverage that was understood to exist and that was already paid for by

25

construction professionals. Prior to the
Group Builders decision, which held that
commercial general liability policies do not
cover bodily injury or property damage
arising from construction defects,
construction professionals entered into and
paid for insurance contracts under the
reasonable, good-faith understanding that
bodily injury and property damage resulting
from construction defects would be covered
under the insurance policy. It was on that
premise that general liability insurance was
purchased.

. . . .

The purpose of this Act is to restore
the insurance coverage that construction
industry professionals paid for and to ensure
that the good-faith expectations of parties
at the time they entered into the insurance
contract are upheld.

2011 Hawaii Laws Act 83 (H.B. 924). The recently enacted statute

provides:

(a) For purposes of a liability
insurance policy that covers occurrences of
damage or injury during the policy period and
that insures a construction professional for
liability arising from construction-related
work, the meaning of the term "occurrence"
shall be construed in accordance with the law
as it existed at the time that the insurance
policy was issued.

Haw. Rev. Stat. § 431:1-217(a) (2011).

Section 431:1-217(a) requires that the Policies be

interpreted under the law as it existed in 2007. Even if this

statute ostensibly nullifies Group Builders by "restoring" pre-

Group Builders law, the statute does not purport to nullify any

decision preceding Group Builders. The Ninth Circuit decided

26

*Burlington* in 2004, so it cannot be said to have created new confusion or to be suddenly upsetting insureds' settled expectations. Nor does the legislature address the effect of other cases relied on by the ICA in *Group Builders*. *See Burlington Ins. Co. v. United Coatings Mfg. Co.*, 518 F. Supp. 2d 1241 (D. Haw. 2007); *WDC Venture v. Hartford Accident & Indem. Co.*, 938 F. Supp. 671 (D. Haw. 1996); *Hawaiian Holiday Macadamia Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 872 P.2d 230 (1994). Those cases predate the effective date of the CGL Policy. Given this chronology and the express statement in section 431:1-217(a) that insurance policies are to be construed in accordance with the law at the time the policies were issued, this court concludes that the Policies in issue in the present case, issued in 2007, continue to fall under the Ninth Circuit's 2004 analysis in *Burlington*. *See State Farm Fire & Cas. Co. v. Vogelgesang*, Civ. No. 10-00172 SOM/BMK, 2011 WL 2670078, at *9-10 (D. Haw. July 6, 2011) (holding that HB 924 did not affect the court's conclusion that a construction defect was not covered as an "occurrence" under a CGL policy because, even if the new statute invalidated *Group Builders*, preexisting law provided an adequate basis for the court's conclusion). To the extent the Policies provide that only damage caused by an "occurrence" triggers coverage, the Policies provide no coverage with respect to the Safeway Action or the Moanalua Claims.

2. **Nordic Does Not Adequately Plead A Claim Based On Completed Operations Provisions.**

Nordic and Marsh argue that, even absent an "occurrence," Nordic is entitled to coverage under the "products completed operations hazard" provisions in the CGL and Umbrella Policies. They claim that, as Nordic paid an additional premium for this coverage, the completed operations provisions must cover something other than what provisions requiring an "occurrence" cover.

The CGL Policy has a "Definitions" section that states:

"Products-completed operations hazard":

 a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" . . . .

CGL Policy at 35, ECF No. 1-1. The "Definitions" section also says:

"Your work":

 a. Means:

  (1) Work or operations performed by you or on your behalf; and

  (2) Materials, parts or equipment furnished in connection with such work or operations.

 b. Includes:

  (1) Warranties or representations made at any time with respect to

28

> the fitness, quality, durability, performance or use of "your work," and
>
> (2) The providing of or failure to provide warnings or instructions.

Id. at 36. The Umbrella Policy has virtually identical language. See Umbrella Policy at 26, 28, ECF No. 1-2.

No party points this court to any portion of the Policies setting forth the scope of coverage provided for completed operations. That is, in the CGL Policy, words and terms are defined, but the parties do not refer the court to any "insuring agreement" applicable to completed operations that is akin to, for example, Coverage A in the CGL Policy. This court assumes that there is such an insuring agreement, given references in the CGL Policy to a "Products/Completed Operations Liability Coverage Form (PCO)," which appears to be separate from the CGL form. See ECF No. 1-1 at 7. The "Definitions" section does not define "completed operations" as limited to bodily injury or property damage caused by an occurrence. The closest thing the "Definitions" section comes to mentioning an occurrence is the reference to bodily injury and property damage "occurring away from premises" owned or rented by Nordic. This use of "occurring" goes to location, not to any accident. It is therefore not immediately clear from the definition that the analysis of "occurrence" is applicable, although there may be an

insuring agreement not identified for the court that clarifies this.

The court is hampered by the parties' failure to brief the completed operations issue thoroughly in their memorandums in support of and in opposition to motions. References to completed operations provisions are cursory. See, e.g., Third-Party Def. Marsh USA Inc.'s Partial Substantive Joinder in Def. Nordic PCL Construction, Inc.'s Opp'n to [Doc 14] Pls.' Mot. to Dismiss Counterclaim filed Oct. 24, 2011 at 12, 19, ECF No. 51; the Insurers' Reply Mem. of Points & Authorities in Supp. of Mot. to Dismiss at 24-25, ECF No. 54. It was at the hearing on the present motions that Marsh and Nordic sought to highlight this argument, pointing out that neither Burlington nor Group Builders discussed any completed operations provision. Marsh further argued that the completed operations coverage provided Nordic with additional, optional coverage that was priced into the Policies. See Tr. of Various Mots. at 11:12-17, 49:16-22, ECF No. 68. When the court asked the Insurers what the completed operations coverage provided in return for that additional premium, the Insurers were unable to provide the court with any explanation or example. See id. at 51:17-57:7. The court directed the parties to file supplemental briefs addressing this limited issue. See id. at 57:14-15.

Notwithstanding references in the CGL Policy to a separate "PCO" form, the Insurers argue in their supplemental brief that completed operations coverage is a part of the coverage provided by the standard CGL form in Coverage A, rather than a separate, optional coverage or endorsement. See Supplemental Briefing Re: "Products-Completed Operations Hazard" at 1, ECF No. 61. They argue that a claim that falls within the completed operations coverage does not escape the requirement that the injury or damage have been caused by an accident. Id. at 2. The Insurers say that the completed operations provisions would cover Nordic's liability for faulty workmanship that ended up causing injury to a shopper, not to a party Nordic contracted with. Coverage for injury or damage to a contracting party, according to the Insurers, is barred by Burlington even under the completed operations provisions. Id. at 3-4.

Nordic responds that completed operations coverage must be an optional coverage requiring an additional premium because the Declarations page appears to list an "advance premium" for completed operations coverage. See Reply Mem. Re: "Products-Completed Operations Hazard" [Doc 61] 2, ECF No. 65. Nordic argues that, in the Insurers' example, claims by both Safeway and the shopper would be covered by the completed operations coverage, as there is no language in the Policies suggesting a distinction. Id. at 4. Nordic also points to two "Exclusions"

that are part of Coverage A.  Exclusion 2(l), for instance,

provides:

> This insurance does not apply to:
>
> l.   Damage To Your Work
>
> "Property Damage" to "your work arising out
> of it or any part of it and included in the
> "products-completed operations hazard".  This
> exclusion does not apply if the damaged work
> or the work out of which the damage arises
> was performed on your behalf by a
> subcontractor.

CGL Policy at 26, ECF No. 1-1.  Reply Mem. Re: "Products-

Completed Operations Hazard" [Doc 61] 5, ECF No. 65 (quoting CGL

Policy at 36, ECF No. 1-1).

The court wishes the Insurers had explained why they

read Coverage A as necessarily inapplicable to an injury to a

shopper, such that completed operations coverage would serve a

necessary function by providing coverage in that instance.  With

respect to Nordic's position, whether the "advance premium" was

an additional charge (as opposed to, for example, going only to

the timing of payment in an "advance" charge) is unclear.  If it

was not an additional amount, then Nordic possibly cannot rely on

any additional cost to argue that it is entitled to additional

coverage.  The Declarations page includes a reference in

connection with completed operations coverage to a coverage limit

of $2,000,000.  The court cannot tell if this is a separate

completed operations aggregate limit or a repetition of the

general aggregate limit.  See CGL Policy at 2, ECF No. 1-1.  This may be material to the issue of whether additional coverage amounts are available.  Compare CGL Policy, Section V, ¶ 16(b)(3) with CGL Policy Endorsement for "Designated Construction Projects General Aggregate Limit" ¶ C, ECF No. 1-1, at 35, 45.  Indeed, the very Declarations provisions that Nordic relies on say more than once that "products-completed operations are subject to the general aggregate limit," indicating that the completed operations provisions do not necessarily make a larger dollar amount of coverage available.  Of course, even if the same dollar cap applies, the circumstances under which insurance coverage is afforded may increase with the purchase of completed operations coverage.  The record is simply presently insufficient to establish what is in effect.

Finally, Nordic urges the court to consider evidence outside of the pleadings, such as the Deposition of Daniel F. Conway, attached to Nordic's supplemental filing, even though the matter is presented in the context of a motion to dismiss.

It appears to the court that Nordic did not clearly state in its Counterclaim what specific provisions or language its contract claim is grounded in.  The inadequate briefing concerning the completed operations coverage may possibly be chalked up to the way Nordic pled its contract claim.

To sufficiently state a breach of contract claim,
Nordic had to plead "(1) the contract at issue; (2) the parties
to the contract; (3) whether Plaintiff performed under the
contract; (4) the particular provision of the contract allegedly
violated by Defendants; and (5) when and how Defendants allegedly
breached the contract."  Honold v. Deutsche Bank Nat'l Trust Co.,
Civ. No. 10-00625 JMS/BMK, 2010 WL 5174383, *3 (D. Haw. Dec. 15,
2010) (citing Otani v. State Farm Fire & Cas. Co., 927 F. Supp.
1330, 1335 (D. Haw. 1996) ("In breach of contract actions, . . .
the complaint must, at a minimum, cite the contractual provision
allegedly violated.  Generalized allegations of a contractual
breach are not sufficient.")).

A number of cases have imposed this requirement in
insurance cases.  In Otani, the insured sued her automobile
insurer for no-fault benefits.  The insurer moved to dismiss the
breach of contract claim on the ground that the insured failed to
identify the specific policy provisions allegedly breached.
Relying on Au v. Au, 63 Haw. 210, 221, 626 P.2d 173, 181 (1981),
which held that a breach of contract claim may be dismissed when
the contractual provision is not specified, the district court
dismissed the breach of contract claim because the insured only
"levie[d] general allegations of a contractual breach" instead of
pointing to contractual provisions.  Otani, 927 F. Supp. at 1335-
36.  Similarly, in Hataishi v. State Farm Mutual Automobile

34

Insurance Co., Civ. No. 95-00732 HG, 1995 WL 867880 (D. Haw. Dec. 12, 1995), the insured argued that the insurer had breached the insurance policy by failing to perform in a timely fashion. Citing Au, the district court concluded that the insured's failure to identify a contractual provision requiring timely performance warranted dismissal.  Id. at *2.

Instead of identifying the specific contractual provisions (either by page or section references, section titles, or quotes) that the Insurers allegedly breached, Nordic describes six nonexclusive ways in which the Insurers allegedly breached the Policies:

> (a) Misrepresenting the coverage afforded under the Policies;
>
> (b) Failing to disclose, prior to the issuance of the Group Builders opinion, any intention by the Insurers that the Policies would not cover construction defects;
>
> (c) Failing to transmit responses to Nordic's tenders that were based on thorough investigations, provided reasonable explanations for the reservation of rights and applied good-faith interpretations of the applicable law;
>
> (d) Unreasonably refusing to acknowledge coverage under the Policies and to participate in good-faith efforts to settle the underlying claims;
>
> (e) Failing to reimburse Nordic for the costs of supplementing the defense provided by appointed defense counsel; and
>
> (f) Failing to reimburse Nordic for the costs expended on the Moanalua Repairs.

Countercl. ¶ 61, ECF No. 10-1.

Like the insured in <u>Otani</u>, Nordic does not in the Counterclaim cite any provision within the Policies that the Insurers allegedly breached.  The only description that is sufficient to give the Insurers adequate notice of what they allegedly breached is Item (b).  That item's reference to <u>Group Builders</u> and the lack of coverage for construction defects keys up the "occurrence" provisions.  Neither Item (b) nor any other description keys up other specific provisions.  While Nordic contends that its 90-paragraph Counterclaim gave the Insurers a "basic understanding of the claims," <u>see</u> Opp'n to Mot. to Dismiss Countercl. at 27, ECF No. 45, Nordic's own failure to refer to any specific completed operations provision in its briefs suggests that Nordic itself was not looking to particular completed operations terms.  To the extent Nordic could nevertheless be said to have relied on specific completed operations provisions in its breach of contract claim, that portion of Count I is dismissed as inadequately pled.  The court does not here make any ruling on the viability of a completed operations claim.  <u>See, e.g.</u>, Countercl. ¶ 61(d)-(f), ECF No. 10-1.

The breach of contract claim is dismissed.  With respect to the "occurrence"-based portion of that claim, the

dismissal is without leave to amend, but Nordic is given leave to amend that claim in other respects.

### C. Count II Does Not State A Claim.

Count II alleges a breach of the covenant of good faith and fair dealing. The Insurers contend that Count II is ambiguous and request a more definite statement under Rule 12(e). Rule 12(e) provides: "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e).

Specifically, the Insurers argue that Nordic's allegation that they breached the covenant of good faith and fair dealing by taking "actions inconsistent with their obligations under the Policies and the interests of the insureds, including Nordic," Countercl. ¶ 66, ECF No. 10-1, is unclear and insufficient to advise them of the alleged wrongdoing. See Mot. to Dismiss Countercl. at 26-27, ECF No. 14.

Because the court dismisses Count I for breach of contract, it also dismisses Count II. Nordic fails to identify the specific contractual provisions that the Insurers allegedly breached, and the court is unable to identify what obligations Count II is based on. Nordic is granted leave to amend the Counterclaim as to Count II to state a claim for breach of the

covenant of good faith and fair dealing, separate and apart from a claim based on the "occurrence" issue discussed earlier in this order.  Any amendment should clarify how, if at all, Count II differs from Count IV, which alleges bad faith.  If there is no difference, one of those claims should be dropped.

### D. Count III Insufficiently Pleads Both Fraudulent and Negligent Misrepresentation.

The Insurers argue that Count III, which alleges misrepresentations and omissions of material facts, is insufficiently pled.  This court agrees.

Count III says that the Insurers "purposely or negligently made material misrepresentations and failed to disclose material information in connection with the Policies." Countercl. ¶ 69, ECF No. 10-1.

The court looks first at misrepresentations or omissions that Nordic claims the Insurers "purposely" made.  Rule 9(b) of the Federal Rules of Civil Procedure requires that, when fraud or mistake is alleged, "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  An allegation of fraud is sufficient under Rule 9(b) if it "identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) (internal

citations and quotations omitted). To sufficiently identify the
circumstances that constitute fraud, a plaintiff must identify
such facts as the times, dates, places, or other details of the
alleged fraudulent activity. Id. A plaintiff must plead these
evidentiary facts and must explain why the alleged conduct or
statements are fraudulent:

> Averments of fraud must be accompanied by
> "the who, what, when, where, and how" of the
> misconduct charged. Cooper v. Pickett, 137
> F.3d 616, 627 (9th Cir. 1997) (internal
> quotation marks omitted). "[A] plaintiff
> must set forth more than the neutral facts
> necessary to identify the transaction. The
> plaintiff must set forth what is false or
> misleading about the statement, and why it is
> false." Decker v. GlenFed, Inc. (In re
> GlenFed, Inc. Sec. Litig.), 42 F.3d 1541,
> 1548 (9th Cir. 1994).

Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir.
2003). Allegations of fraud based on information and belief do
not satisfy Rule 9(b) if the factual bases for the belief are not
included. Neubronner, 6 F.3d at 672.

The Hawaii Supreme Court has referred to intentional
misrepresentation as interchangeable with fraudulent
misrepresentation. See Ass'n of Apartment Owners of Newtown
Meadows ex rel. its Bd. of Dirs. v. Venture 15, Inc., 115 Haw.
232, 263, 167 P.3d 225, 256 (Haw. 2007). To survive a motion to
dismiss an intentional or fraudulent misrepresentation claim, a
plaintiff must allege that (1) false representations were made by
the defendant, (2) with knowledge of their falsity (or without

knowledge of their truth or falsity), (3) in contemplation of the plaintiff's reliance upon them, and (4) the plaintiff detrimentally relied on them.  <u>Hawaii's Thousand Friends v. Anderson</u>, 70 Haw. 276, 286, 768 P.2d 1293, 1301 (1989).  The circumstances constituting the alleged fraud must be pled with particularity.  Fed. R. Civ. P. 9(b).  Rule 9(b)'s purposes are to provide defendants with notice that allows them to defend against a charge, to protect those whose reputation would be harmed by an accusation of fraud, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties, and society social and economic costs without some factual basis.  <u>Kearns v. Ford Motor Co.</u>, 567 F.3d 1120, 1125 (9th Cir. 2009).

The Insurers correctly note that Nordic did not plead the date(s) or location(s) of the alleged fraud, or the person(s) making the alleged misrepresentations.  Nor does Nordic articulate the facts underlying any belief as to the Insurers' fraudulent intent.  Most troubling is the inadequacy of the allegations concerning the content of any fraudulent misrepresentation.

First, because Count III encompasses both fraudulent misrepresentations and negligent misrepresentations, it should, but does not, provide any indication as to which statements are alleged to have been made fraudulently, and which negligently.  Nordic may not evade Rule 9's particularity requirements by

saying that misrepresentations were made either fraudulently or negligently.

Second, Nordic leaves open the possibility that it is basing its claim on statements that Nordic has not yet even hinted at. Thus, Nordic identifies within Count III only one specific misrepresentation and one specific omission, but precedes the description of those specific items with the words, "For example, and without limitation." See Countercl. ¶ 70.

Third, Nordic begins Count III by realleging "the allegations contained in all of the foregoing paragraphs as if fully set forth herein." Id. ¶ 68. This incorporation by reference is sometimes referred to as a "shotgun" or "puzzle" pleading. A "shotgun" pleading incorporates all preceding allegations into a count. A "puzzle" pleading requires opponents and the court to match alleged representations up with allegations regarding their fraudulent nature. While the Ninth Circuit has not addressed the issue of whether "shotgun" or "puzzle" pleadings typically fail to satisfy Rule 9, see Prim Ltd. Liability Co. v. Pace-O-Matic, Inc., Civ. No. 10-00617 SOM-KSC, 2012 WL 263116, at *5-6 (D. Haw. Jan. 30, 2012), in the present case the pleadings do not satisfy Rule 9 because it is impossible to identify all of the realleged statements forming the bases of Nordic's fraudulent misrepresentation claim.

To the extent Count III alleges negligent misrepresentation, those allegations are not governed by Rule 9(b). In a negligent misrepresentation claim, Hawaii law requires that "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation." Blair v. Ing, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (citing Restatement (Second) of Torts § 552). See Peace Software, Inc. v. Hawaiian Elec. Co., Inc., Civ. No. 09-00408 SOM-LEK, 2009 WL 3923350, at *6 (D. Haw. Nov. 17, 2009) (relying on Blair for the Hawaii standard for negligent misrepresentation). Because a negligent misrepresentation claim does not require intent, it is not subject to Rule 9(b). See id. at *8; see also Bush v. Rewald, 619 F. Supp. 585, 608 (D. Haw. 1985). Negligent misrepresentation is subject only to Rule 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. Rule 8(a)(2).

Notwithstanding the lack of a particularity requirement for negligent misrepresentation, the court dismisses the negligent misrepresentation portion of Count III because, as written, it allows Nordic to spring on the Insurers an unlimited number of unidentified misrepresentations. When a count

42

encompasses both fraudulent and negligent misrepresentations and the court dismisses the fraudulent misrepresentation portion as inadequately pled under Rule 9, the court sometimes permits the negligent misrepresentation portion to proceed based on the assumption that all identified statements form the bases of the negligent misrepresentation portion of the count. Count III, however, is not conducive to such treatment, as it is notably short on specific examples, which are identified "without limitation." This is less than the "short and plain statement of the claim" required by Rule 8.

Count III is dismissed as inadequately pled, although Nordic is given leave to file an amended complaint more adequately asserting this claim.

        E.    **Count IV Sufficiently Pleads Bad Faith, Except To the Extent Based on Fraud.**

The Insurers contend that Counts I (breach of contract), II (breach of the covenant of good faith and fair dealing), and IV (bad faith) are grounded in fraud and so are subject to Rule 9's particularity requirement. Counts I and II, discussed above, are dismissed on other grounds. With respect to Count IV, the court notes that dismissal of an entire claim under Rule 9(b) is only appropriate when either fraud is a necessary element of the claim or the plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim." <u>Vess</u>, 317 F.3d at 1103.

43

Fraud is not a necessary element of a bad faith claim in Hawaii.  See Best Place, Inc. v. Penn America Ins. Co., 82 Haw. 120, 133, 920 P.2d 334, 347 (1996) (adopting the test in Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 556, 510 P.2d 1032 (1932), and stating that, under that test, "the insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured").

Nor does Nordic "rely entirely on" a fraudulent course of conduct.  Count IV relies on several bases, including fraud.  Paragraph 83 of the Counterclaim refers, for example, to the Insurers' alleged failure to thoroughly investigate matters and failure to transmit appropriate responses to Nordic's tenders.  Such matters are at least arguably not grounded in fraud.  Thus, the entirety of Count IV is not subject to dismissal based on Rule 9.

This does not mean, however, that Rule 9's particularity requirement has no relevance to Count IV.  Count IV does include some allegations of fraud.  See, e.g., Countercl. ¶ 82 ("the Insurers have fraudulently, and in bad faith continued to disclaim defense and indemnity coverage").  When a claim is based on some fraudulent and some nonfraudulent  conduct, "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." Vess, 317 F.3d at 1104.  To the extent Count IV is based on fraud, it is insufficiently pled.    Its

insufficiency rests in Nordic's failure to clarify which of the acts or omissions underlying the bad faith claim were allegedly fraudulent and in Nordic's refusal to put any limit on the bad faith actions. The lack of limit is evident in Nordic's reference to examples of the Insurers' bad faith that "include, among others and without limitation, the following." Countercl. ¶ 83.

Of course, the unlimited nature of Count IV is also problematic with respect to the nonfraud allegations of bad faith. However, Count IV, in contrast to Count III, is sufficiently clear that the court does not dismiss the nonfraud portion of Count IV based on the lack of limitation. Notably, Count IV has more specifics than Count III. Instead, the court limits the nonfraud portion of Count IV to facts that the Insurers are given notice of in the pleading. The court is certainly not saying that every single evidentiary fact in a case must be included in a claim. The court is instead saying that the allegedly wrongful acts must be identified, and that a claim is inadequately pled when it purports to be based on matters referred to only as "others."

This court dismisses Count IV to the extent it is based on fraud, but denies the motion to dismiss Count IV in all other respects, while limiting Count IV to the factual bases that Nordic's pleading puts the Insurers on notice of.

VI.     THE INSURERS' MOTION TO STRIKE PORTIONS OF THE
        COUNTERCLAIM.

        A.    Standard.

        Rule 12(f) of the Federal Rules of Civil Procedure
provides that the "court may strike from a pleading an
insufficient defense or any redundant, immaterial, impertinent,
or scandalous matter." Fed. R. Civ. P. 12(f).  The function of a
Rule 12(f) motion is to avoid the waste of time and money spent
on litigating spurious issues by dispensing with those issues
before trial.  Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880,
885 (9th Cir. 1983).  Grounds for a motion to strike must be
readily apparent from the face of the pleadings or from materials
that may be judicially noticed.  Wailua Assocs. v. Aetna Cas. &
Sur. Co., 183 F.R.D. 550, 554 (D. Haw. 1998).

        A matter will not be stricken from a pleading unless it
is clear that it can have no possible bearing on the subject
matter of the litigation.  Id.  A matter is "immaterial" if it
"has no essential or important relationship to the claim for
relief or the defenses being pleaded." Fantasy, Inc. v. Fogerty,
984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510
U.S. 517 (1994); 5A Charles Alan Wright & Arthur R. Miller,
Federal Practice and Procedure § 1382 (3d ed. 2004).  Impertinent
matter consists of statements that do not pertain, and are not
necessary, to the issues in question.  Wailua Assocs., 183 F.R.D.
at 553 (noting that an allegation is impertinent when it is

irrelevant).  Thus, courts will generally grant a motion to strike only when the moving party has proved that the matter to be stricken could have no possible bearing on the subject matter of the litigation.  See Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc., 217 F. Supp. 2d 1028, 1033 (C.D. Cal. 2002); LeDuc v. Ky. Cent. Life Ins. Co., 814 F. Supp. 820, 830 (N.D. Cal. 1992).

      B.   Counterclaim Allegations Are Not Stricken.

The Insurers move to strike certain portions of the Counterclaim that they characterize as immaterial to the present lawsuit.  The Insurers ask the court to strike paragraphs 65, 83(d), 61(e), and 83(e).

Paragraph 65 states:

> The Insurers breached their duties of good faith and fair dealing by asserting the right not to defend and/or indemnify Nordic in the proceedings arising from and out of the Projects.

Paragraph 83(d) alleges that the Insurers are liable for:

> Unreasonably refusing to acknowledge coverage under the Policies and to participate in good-faith efforts to settle the underlying claims.

Paragraphs 61(e) and 83(e) allege that the Insurers are liable for:

> Failing to reimburse Nordic for the cost of supplementing the defense provided by appointed defense counsel.

Motions to strike are disfavored in the absence of prejudice. "A motion to strike is a severe measure and it is generally viewed with disfavor [and is] not normally granted unless prejudice would result to the movant from the denial of the motion." United States v. 729,773 Acres of Land, 531 F. Supp. 967, 971 (D. Haw. 1982). In deciding a motion to strike, the court "views the challenged pleadings in the light most favorable to the plaintiffs." Wailua Assocs., 183 F.R.D. at 554 (citing Hoeft, 967 F.2d at 1301).

The Insurers do not address Rule 12(f)'s standard or specify the manner in which the Counterclaim is redundant, immaterial, impertinent, or scandalous. Rather, they argue the merits of the claims, effectively asking the court to partially dismiss Counts I, II, and IV of the Counterclaim.[2] Viewing the

---

[2] As to paragraph 65, the Insurers argue that the reservation of rights was not improper, because insurers are allowed to defend under a reservation of rights, and because there is no coverage under the policies. See Motion to Strike at 10-20, ECF No. 15. Both of these arguments require the court to look beyond the pleadings, especially with regard to the Group Builders argument discussed earlier in this order.

As to paragraph 83(d), the Insurers argue that they have no duty to settle the Safeway Action, and therefore did not act in bad faith. Id. at 23-24. The Insurers again rely on Group Builders and "occurrence" arguments extensively briefed elsewhere in the motions, and go beyond the face of the Counterclaim.

Finally, as to paragraphs 61(e) and 83(e), the Insurers argue that they are not required to reimburse Nordic for its defense costs because they have appointed defense counsel to represent Nordic, and because now is not the proper time to

Counterclaim in the light most favorable to Nordic, the court cannot say that the grounds for striking paragraphs 65, 83(d), 61(e), and 83(e) are apparent simply from the face of the Counterclaim.  Finally, the Insurers do not articulate what prejudice, if any, they will face if the paragraphs are not stricken.

The Insurers' Motion to Strike is not the proper vehicle with which to challenge the contested portions of the Counterclaim.  While elsewhere in this order this court dismisses claims that include one or more of the paragraphs in issue, Rule 12(f) does not apply.  The Motion to Strike is accordingly denied.

VI.     <u>MARSH'S MOTION TO DISMISS OR STAY AND NORDIC'S JOINDER.</u>

A.     Marsh And Nordic Seek Dismissal Of the Insurers' <u>Claims Based on the "Occurrence" Issue.</u>

Marsh and Nordic seek dismissal of the Insurers' claims that assert that the Policies do not cover the Safeway Action or the Moanalua Claims.  In seeking this dismissal, Marsh and Nordic rely on the same "occurrence" arguments they made in opposing the Insurers' Motion to Dismiss.  For the reasons underlying the court's ruling on the "occurrence" issue raised in the Insurers'

determine whether the Insurers breached their duty of good faith. <u>Id.</u> at 20-23.  This matter cannot be resolved solely by looking at the face of the Counterclaim.

Motion to Dismiss Counterclaim, the court denies the mirror-image
motion by Marsh and Nordic.

       B.   <u>Motion To Stay.</u>

           1.   <u>Standard.</u>

    "[T]he power to stay proceedings is incidental to the
power inherent in every court to control the disposition of the
causes on its docket with economy of time and effort for itself,
for counsel, and for litigants." <u>Landis v. N. Am. Co.</u>, 299 U.S.
248, 254 (1936). <u>See</u> <u>Leyva v. Certified Grocers of Cal., Ltd.</u>,
593 F .2d 857, 864 (9th Cir. 1979) ("[T]he court may order a stay
of [an] action pursuant to its power to control its docket and
calendar and to provide for a just determination of the cases
pending before it."). In addition, "the Declaratory Judgment Act
has been understood to confer on federal courts unique and
substantial discretion in deciding whether to declare the rights
of litigants." <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286
(1995). As the Supreme Court notes:

> Consistent with the nonobligatory nature of
> the remedy, a district court is authorized,
> in the sound exercise of its discretion, to
> stay or to dismiss an action seeking a
> declaratory judgment before trial or after
> all arguments have drawn to a close. In the
> declaratory judgment context, the normal
> principle that federal courts should
> adjudicate claims within their jurisdiction
> yields to considerations of practicality and
> wise judicial administration.

<u>Id.</u> at 288 (footnote omitted).

This discretion, however, is not unfettered.  Gov't

Emps. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998) (en

banc).  Guidance on whether to stay an insurance coverage action

pending resolution of an underlying state court action is

provided by Brillhart v. Excess Insurance Co. of America, 316

U.S. 491 (1942), and its progeny.

    In Brillhart, the Supreme Court stated that it would

ordinarily

> be uneconomical as well as vexatious for a
> federal court to proceed in a declaratory
> judgment suit where another suit is pending
> in a state court presenting the same issues,
> not governed by federal law, between the same
> parties. Gratuitous interference with the
> orderly and comprehensive disposition of a
> state court litigation should be avoided.

Brillhart, 316 U.S. at 495.  Brillhart set forth a nonexhaustive

list of factors to be considered in determining whether to stay

or dismiss a federal court Declaratory Judgment Act case:

> Where a district court is presented with a
> claim such as was made here, it should
> ascertain whether the questions in controversy
> between the parties to the federal suit, and
> which are not foreclosed under the applicable
> substantive law, can better be settled in the
> proceeding pending in the state court. This
> may entail inquiry into the scope of the
> pending state court proceeding and the nature
> of defenses open there. The federal court may
> have to consider whether the claims of all
> parties in interest can satisfactorily be
> adjudicated in that proceeding, whether
> necessary parties have been joined, whether
> such parties are amenable to process in that
> proceeding, etc.

Id.

     "The Brillhart factors remain the philosophic touchstone for the district court. The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Dizol, 133 F.3d at 1225 (citation omitted). The following additional factors are sometimes considered:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.

Id. at 1225 n.5 (quoting Am. States Ins. Co. v. Kearns, 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth, concurring)) (some quotations marks omitted). District courts might also consider "the convenience of the parties, and the availability and relative convenience of other remedies." Id. (quoting Kearns, 15 F.3d at 145 (Garth, J., concurring)).

     When parallel state proceedings exist, "there is a presumption that the entire suit should be heard in state court." Id. at 1225. However, the existence of an action in state court does not automatically bar a request for federal

declaratory relief. <u>Id.</u> "[T]here is no presumption in favor of abstention in declaratory actions generally, nor in insurance coverage cases specifically." <u>Id.</u>

        2.   <u>A Stay Is Not Warranted Here.</u>

            a.   The Record Does Not Establish That
                  There Are <u>Parallel State Court Actions.</u>

On balance, the <u>Brillhart</u>/<u>Dizol</u> factors do not weigh in favor of dismissing this action. First and foremost, the Safeway Action does not involve the Insurers as parties or the issue of the Insurers' obligations under the Policies. That is, the state court is not being asked to determine whether the Insurers have a duty to defend or indemnify Nordic.

This court is unpersuaded by Marsh's and Nordic's citation to recent decisions by other federal judges in this district to stay their respective cases when confronted with the <u>Group Builders</u> issue presented here. Marsh directs this court to Judge Ezra's decision in <u>TIG Insurance Company v. Haseko Homes, Inc.</u>, Civ. Nos. 10-00107 DAE-KSC, 10-00146 DAE-KSC, 10-00575 DAE-KSC, 2011 WL 264315 (D. Haw. Jan. 26, 2011) ("<u>TIG Insurance</u>"); Judge Kay's decision in <u>National Union Fire Insurance Company of Pittsburgh, PA v. Simpson Manufacturing Company</u>, Civ. No. 11-00254 ACK-RLP, 2011 WL 5374355 (D. Haw. Nov. 7, 2011) ("<u>National Union</u>"); and Judge Kobayashi's decision in <u>Axis Surplus, Ins. Co. v. McCarthy/Kiewit</u>, Civ. No. 10-00595 LEK-BMK, 2012 WL 112544 (D. Haw. Jan. 12, 2012) ("<u>Axis</u>

Surplus"). Stays were ordered in all three cases given parallel proceedings in which the "occurrence" issue was before a state court in a related case. That is not the situation here.

In TIG Insurance, Judge Ezra applied the Brillhart factors to a declaratory action involving the construction of the term "occurrence" in an insurance policy in light of the Group Builders decision. The state court had before it a declaratory judgment lawsuit involving the same underlying construction defects in the same project, Coastal Construction Company, Inc. v. North American Specialty Insurance Company, Circuit Court for the First Circuit, State of Hawaii, Civil No. 10-1-0410-02 (PWB). See TIG Ins., 2011 WL 264315, at *4. Although the parties in the federal declaratory action and the state declaratory action did not perfectly mirror each other, "[u]nderlying state actions need not involve the same parties nor the same issues to be considered parallel. Indeed, '[i]t is enough that the state proceedings arise from the same factual circumstances.'" Id. at *12 (citing Keown v. Tudor Ins. Co., 621 F. Supp. 2d 1025, 1037 (D. Haw. 2008)). Judge Ezra deemed the Coastal action in state court a parallel state proceeding because the "insurance coverage claims [in the state action] are precisely the issues that TIG, NAS, and Clarendon are asking the Court to decide here. Furthermore, each party present in the consolidated action, excluding TIG and Foundations, is involved

in the <u>Coastal</u> Action in some capacity." <u>Id.</u> at *13. Judge

Ezra determined that there was "a parallel state proceeding that

weighs in favor of staying the consolidated action until the

Hawaii state court resolves the motions to dismiss or sever in

the <u>Coastal</u> Action." <u>Id.</u> at *14.

Judge Kay's case, <u>National Union</u>, was a declaratory

action concerning the same underlying construction defects as in

<u>TIG Insurance</u> and <u>Coastal Construction</u>. Judge Kay relied

heavily on Judge Ezra's decision in <u>TIG Insurance</u>, noting that

"[t]he <u>Coastal</u> action is parallel to this case for many of the

same reasons that <u>Coastal</u> is parallel to TIG. Specifically, as

it was in <u>TIG</u>, '[i]t is readily apparent that at the very least,

the <u>Coastal</u> Action and the instant . . . action arise from the

same factual circumstances, namely the alleged defective

construction work that occurred at the Ocean Pointe

development." <u>Nat'l Union</u>, 2011 WL 5374355, at *6. Moreover,

as Judge Kay noted, at the time he issued his order, "the

insurance coverage issues in <u>Costal</u> have been remanded to state

court, such that if this Court were to proceed, it would

assuredly decide overlapping issues." <u>Id.</u> at *7.

Most recently, Judge Kobayashi issued her decision to

stay the proceedings in <u>Axis Surplus</u> in favor of a state court

proceeding. In that case, the insureds "filed a complaint

against [the plaintiffs] in the Circuit Court for the County of

St. Louis, State of Missouri, for breach of contract, anticipatory breach of contract, breach of the implied covenant of good faith and fair dealing, insurance bad faith, and declaratory judgment . . . . Plaintiffs filed a First Amended Complaint in this Court, naming the exact same parties as the Missouri Action." <u>Axis Surplus</u>, 2012 WL 112544, at \*2. In examining the <u>Brillhart</u> factors and deciding to stay the case in favor of the action in state court, Judge Kobayashi concluded that "the policy of avoidance of duplicative litigation tips slightly in favor of staying or dismissing the instant case pending the resolution of the broader Missouri Action. Both actions involve identical parties, and there are factual and legal determinations to be made in the Missouri Action that will be common to both cases." <u>Id.</u> at \*11.

Unlike <u>TIG Insurance</u>, <u>National Union</u>, and <u>Axis Surplus</u>, the present case is not parallel to any proceeding in state court. The underlying Safeway Action includes no insurance coverage claim.

Marsh also argues that <u>Coastal Construction</u> and <u>National Union Fire Insurance Company of Pittsburgh, PA v. Sunset Heights Hawaii, LLC</u>, Circuit Court of the First Circuit, State of Hawaii, Civil No. 10-1-2184-10 (GWBC), are parallel to the present case even though they involve different parties and different projects. Marsh says they are both pending coverage

cases allegedly considering the construction of the term "occurrence" in light of the ICA's decision in <u>Group Builders</u> or the subsequent legislation. But because those cases do not address the same facts and issues as the present case, their outcomes will not directly affect either the Safeway Action or the present lawsuit. Nor is it possible to guarantee that either of those cases will actually be decided on the basis of any issue before this court, since those cases may include other claims that, once ruled on, render it unnecessary for the state court to address the "occurrence" issue. Indeed, even while pointing to rulings issued by Hawaii's state court judges after extensive briefing on the "occurrence" issue, Marsh and Nordic are unable to state that the rulings actually turned on the "occurrence" issue. Accordingly, the court determines that the present record does not establish that there is a parallel proceeding in state court.

> b. This Case Is Unlikely To Involve
> <u>Needless Determination Of State Law.</u>

The next factor this court examines in determining whether to abstain is whether the case involves needless determinations of state law. This factor concerns unsettled issues of state law, as opposed to fact-finding in the specific case. <u>See</u> <u>Allstate Ins. Co. v. Davis</u>, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006).

The court acknowledges that Group Builders and Act 83 appear to have given rise to much litigation. This court also recognizes that Judge Kay, in National Union, stated:

> the questions about Hawaii insurance law raised by H.B. 924 should be answered first in the Hawaii state courts. The bill states that "the meaning of the term 'occurrence' shall be construed in accordance with the law as it existed at the time that the insurance policy was issued," H.B. 924 § 2, but what exactly that means is unsettled at this point.

Nat'l Union, 2011 WL 5374355, at *6. Judge Ezra, speaking before H.B. 924 was passed, said, in contrast, "There is sufficient guidance on how to resolve these issues, and if need be, this Court has the option of certifying a question to the Hawaii Supreme Court. Accordingly, the Court is not persuaded that it is incapable of deciding these insurance coverage questions at this time." TIG Ins. Co., 2011 WL 264315, at *11.

This judge does not read the recent state legislation, as confusing at it is, as trumping Burlington. See Vogelgesang, 2011 WL 2670078, at *9-10. This judge therefore concludes that it remains bound by Burlington.

c.    There Is No Evidence Of Forum Shopping.

The next factor this court considers is whether the action involves forum shopping. The Ninth Circuit has stated that this factor is designed to discourage an insurer from "filing a federal court declaratory action to see if it might

58

fare better in federal court at the same time the insurer is engaged in a state court action." See Am. Cas. Co. of Reading, Penn. v. Krieger, 181 F.3d 1113, 1119 (9th Cir. 1999).

There is no evidence of forum shopping in the present case. Because the Insurers are not parties to the underlying suite in state court, and because it is unlikely that the Insurers could even be joined in such a suit, see Olokele Sugar Co. v. McCabe, Hamilton, & Renny Co., 53 Haw. 69, 71-72, 487 P.2d 769, 770 (1971), forum shopping is not a reason this court should abstain.

### d. The Other Dizol Factors Do Not Support Abstention.

Other factors listed in Dizol do not support abstention here.

Although this case will not resolve all of the issues pertaining to the construction defects, it will resolve all pending insurance coverage issues and will therefore serve a useful purpose in clarifying the legal relations at issue.

This case does not appear to have been filed merely for the purposes of procedural fencing or to obtain a "res judicata" advantage.

Nor will this case necessarily result in entanglement between the federal and state court systems, as the insurance coverage issues presented here are separate and distinct from the breach of contract and tort issues asserted in the

underlying state-court case.  The court recognizes the possibility that some factual finding might be necessary in both cases.  However, the record does not suggest a danger of excessive entanglement.

Although it may be inconvenient for Nordic to litigate against Safeway in state court and against the Insurers in federal court, the convenience of the parties does not weigh in favor of abstention.  The state court action is proceeding in a state court building across the street from this court, so there is no geographical burden.  Any inconvenience that Nordic may suffer by having to litigate in two separate forums is at least equaled by the inconvenience the Insurers would suffer if this court abstained, forcing the Insurers either to file a coverage action in state court or to face uncertainty about their obligations for the duration of the underlying action in state court.

Having considered the <u>Brillhart</u> and <u>Dizol</u> factors, the court denies the request for a stay.

VII. <u>MARSH'S MOTION FOR JUDGMENT ON THE PLEADINGS.</u>

Finally, the court turns to Marsh's Motion for Judgment on the Pleadings, which challenges Counts V and VI of the Third-Party Complaint insofar as they are premised on joint tortfeasor theories of liability.  Because the theories are inapplicable to the present case, the court grants the motion.

A.    Standard.

Rule 12(c) of the Federal Rules of Civil Procedure
states: "After the pleadings are closed—but early enough not to
delay trial—a party may move for judgment on the pleadings."
Fed. R. Civ. P. 12(c).  The standard governing a Rule 12(c)
motion for judgment on the pleadings is "functionally identical"
to that governing a Rule 12(b)(6) motion.  United States ex rel.
Cafasso v. Gen. Dynamics C4 Sys., Inc., 637 F.3d 1047, 1054 n.4
(9th Cir. 2011).  For a Rule 12(c) motion, the allegations of
the nonmoving party are accepted as true, while the allegations
of the moving party that have been denied are assumed to be
false.  See Hal Roach Studios, Inc. v. Richard Feiner & Co.,
Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  A court evaluating a
Rule 12(c) motion must construe factual allegations in a
complaint in the light most favorable to the nonmoving party.
Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009). "Judgment
on the pleadings under Rule 12(c) is proper when the moving
party establishes on the face of the pleadings that there is no
material issue of fact and that the moving party is entitled to
judgment as a matter of law."  Jensen Family Farms, Inc. v.
Monterey Bay Unified Air Pollution Control Dist., 644 F.3d 934,
937 n.1 (9th Cir. 2011).

Generally, when matters outside the pleadings are
considered, a motion for judgment on the pleadings must be

construed as one for summary judgment under Rule 56 of the
Federal Rules of Civil Procedure.  See Fed. R. Civ. P. 12(d).
Courts have held, however, that on a Rule 12(c) motion,
consideration of matters subject to judicial notice do not
convert the motion into one for summary judgment.  See
Heliotrope Gen., Inc. v. Ford Motor Co., 189 F.3d 971, 981 n.18
(9th Cir. 1999) ("When considering a motion for judgment on the
pleadings, this court may consider facts that are contained in
materials of which the court may take judicial notice."
(quotation marks omitted)).

      B.   Equitable Implied Indemnity.

      Marsh first argues that Count V (for equitable
indemnity) should be dismissed because it applies only to
defendants jointly and severally liable to the plaintiff or
claimant.  See Mot. for J. on the Pleadings at 16, ECF No. 29.
Nordic asserts that its claims are not based on any statute, but
rather on a theory of implied indemnity.  See Opp'n to Mot. for
J. on the Pleadings at 6, ECF No. 43.

      This district has recently examined equitable
indemnification under Hawaii law.  Judge Kobayashi issued an
instructive decision clearly setting forth the necessary
elements of equitable indemnity:

      According to the Hawaii Supreme Court,

      indemnification is available when "'two
      persons are liable in tort to a third person

for the same harm and one of them discharges the liability of both[.]'" <u>Brooks v. Dana Nance & Co.</u>, 113 Hawaii 406, 416, 153 P.3d 1091, 1101 (2007) (quoting Restatement (Second) of Torts § 886B(1)). Under those circumstances, the person discharging the liability "'is entitled to indemnity from the other if the other would be unjustly enriched at his expense by the discharge of the liability.'" <u>Id.</u> (quoting Restatement (Second) of Torts § 886B(1)) (emphasis omitted).

<u>Brewer Envtl. Indus., LLC v. Matson Terminals, Inc.</u>, Civ. No. 10-00221 LEK-KSC, 2011 WL 1637323, at *13 (D. Haw. Apr. 28, 2011).

Count V consists of only two paragraphs:

64.     If the Insurers prevail against Nordic in the Action, Nordic will be denied defense and indemnity coverage for the Safeway Claim and the Moanalua Claim, and reimbursement of the amounts it expended on repair costs and defense of the claims, which will be the legal and proximate result of the primary, active and affirmative conduct, negligence, and fault of Marsh.

65.     Consequently, Nordic will be entitled to complete indemnification from Marsh for the cost of Nordic's defense and indemnity of all claims that would have been provided if Marsh had procured Anticipated Insurance Coverage.

Third-Party Compl. ¶¶ 64-65, ECF No. 11.

Nordic fails to plead facts necessary for equitable indemnification: (1) that it discharged a debt owed to a third party; (2) that Marsh was also liable to that third party; and (3) that, as between Nordic and Marsh, the obligation ought to be discharged by Marsh. <u>See</u> <u>Brewer Envtl. Indus., LLC</u>, 2011 WL

63

1637323, at *13.  Even assuming the court were to construe the litigation and repair costs Nordic has incurred as "a debt owed to a third party," Nordic has failed to allege in any way that Marsh would have been liable to that third party.  At most, Marsh may be liable to Nordic, but there is no indication in the pleadings that Marsh would be liable to the Insurers, Safeway, or MSC.  Accordingly, the Motion for Judgment on the Pleadings is granted as to Count V.

C.   <u>Contribution And Equitable Subrogation.</u>

Marsh argues that Count VI (for contribution and equitable subrogation) should be dismissed because no one is asserting any tort claim against Nordic upon which Nordic could be secondarily or passively negligent, or derivatively or vicariously liable.  <u>See</u> Mot. for J. on the Pleadings at 9, ECF No. 29.  In opposition, Nordic does not specify to whom Nordic could possibly be liable, but argues that "the carriers are contesting their duty to provide such defense and indemnification [under the policies procured by Marsh], causing Nordic to incur significant unanticipated payments.  As Nordic should not have incurred that obligation, it is entitled to reimbursement from Marsh for the resulting costs."  Opp'n to Mot. for J. on the Pleadings at 3-4, ECF No. 43.

Under Hawaii law, contribution is only available when joint tortfeasors are "severally liable for the same injury to

64

plaintiff. . . . And a tortfeasor . . . cannot be jointly and/or severally <u>liable</u> with another unless '[t]he person who has been harmed can sue <u>and recover</u> from both.'" <u>Ozaki v. Assoc. of Apartment Owners of Discovery Bay</u>, 87 Haw. 265, 271 n.5, 954 P.2d 644, 650 n.5 (1998) (emphasis in original).

Count VI of the Counterclaim asserts contribution and equitable subrogation against Marsh:

> 67. If the Insurers prevail against Nordic in this Action, Nordic will be denied defense and indemnity coverage for the Safeway Claim and the Moanalua Claim, and reimbursement of the amounts it expended on repair costs and defense of claims, which will be the legal and proximate result of the primary, active and affirmative conduct, negligence, and fault of Marsh.

> 68. If the Insurers prevail against Nordic in the Action, Nordic's role, if any, in any denial of defense and indemnity coverage for the Safeway Claim and the Moanalua Claim, and/or for reimbursement of the amounts it expended on repair costs and defense of the claims, will have been only secondary, passive, derivative, or vicarious.

> 69. Accordingly, Nordic will be entitled to complete contribution, or alternatively equitable subrogation, from Marsh for the cost of Nordic's defense and indemnity of all claims for property damage arising from the construction of the Safeway Project and the Moanalua Project, because equity and fairness require Marsh to bear the consequences of its failure to procure Anticipated Insurance Coverage.

Third-Party Compl. ¶¶ 67-69, ECF No. 11.

Marsh argues that because Marsh and Nordic are not joint tortfeasors with respect to any third party, contribution is inapplicable to the present case. Mot. for J. on the Pleadings, 8-9, ECF No. 29. The court agrees. In this context, contribution is only available if Nordic and Marsh are both liable to a third party such as the Insurers, Safeway, or MSC. See generally 16 Lee Russ, Couch on Insurance § 222.98 (3d ed.) (2011) (in the insurance context, "the aim of equitable contribution is to apportion a loss between two or more insurers who cover the same risk, so that each pays its fair share and one does not profit at the expense of the others. Accordingly, equitable contribution applies only between insurers, and only in the absence of contract, and therefore it has no place between insurer and insured, which have contracted the one with the other"). Nordic fails to allege that it is jointly liable with Marsh to any third party.

Nordic relies on Nautilus Insurance Co. v. Lexington Insurance Co., Civ. No. 09-00537 DAE-LEK, 2010 WL 4812742 (D. Haw. Nov. 17, 2010), for the proposition that "[e]quitable contribution permits reimbursement to the insurer that paid on the loss for the excess it paid over its proportionate share of the obligation, on the theory that the debt it paid was equally and concurrently owed by the other insurers and should be shared by them pro rata in proportion to their respective coverage of

the risk." <u>Id.</u> at *7 n.7.  However, that case involved co-insurers who were potentially liable to the same insured.  Marsh and Nordic have no analogous common obligation or debt.

Equitable subrogation is equally inapplicable. Regarding subrogation principles, the Hawaii Supreme Court says,

> As one might guess, "subrogation plays an important role in insurance law . . . . When subrogation[ ] runs its course, the legally responsible third party reimburses the insurer for having paid the debt which the party owed the insured."  Robert H. Jerry, II, <u>Understanding Insurance Law</u> §§ 96[a] and 96[b], at 600 (2nd ed. 1996). "Subrogation is used to refer to both a legal right and a legal action.  The word itself comes from the Latin 'subrogare,' which means 'to put in the place of another or to substitute.'"  4 R. Long, <u>The Law of Liability Insurance</u> § 23.01, at 23-2 (1998); <u>see also</u> <u>Taylor v. Government Employees Ins. Co.</u>, 90 Hawaii 302, 310, 978 P.2d 740, 748 (Haw. 1999) (citing <u>Shimabuku v. Montgomery Elevator Co.</u>, 79 Hawaii 352, 358, 903 P.2d 48, 54 (1995)).  "In the insurance field, subrogation is needed in order to preserve the principle of indemnity."  <u>The Law of Liability Insurance</u>, <u>supra</u>, § 23.01, at 23-3.

> Basically, "two different kinds of subrogation exist.  'Equitable subrogation' (sometimes called, curiously enough, 'legal subrogation') is a principle of equity; it is effected by operation of law and arises out of a relationship that need not be contractually based.  'Conventional subrogation' arises out of the contractual relationship of the parties . . . ." <u>Understanding Insurance Law</u>, <u>supra</u>, §§ 96[a] and 96[b], at 602-04 (footnotes and brackets added); <u>see also</u> 3 Alan I. Widiss, <u>Uninsured and Underinsured Motorist Insurance</u> § 44.4, at 364 (2d ed. 1995 and Cum. Supp. 1998); <u>The Law of Liability Insurance</u>, <u>supra</u>, § 23.02,

at 23-5. Accordingly, "[a]n insurer which
pays a claim against an insured for damages
caused by the default or wrongdoing of a
third party is entitled to be subrogated to
the insured's rights against such third
party, irrespective of the nature of the
contract . . . even though the policy
contains no stipulations to that effect."  8B
John A. Appleman and Jean Appleman, Insurance
Law and Practice § 4941, at 31-38 (1981)
(Appleman on Insurance) (emphases added); see
also Taylor, at 310, 978 P.2d at 748.

State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc., 90 Haw. 315,

328-29, 978 P.2d 753, 766-67 (1999).

As with indemnification and contribution, subrogation

requires that Nordic have paid a debt to a third party for which

Marsh was primarily liable.  Nordic does not allege that Marsh

was liable to the Insurers, Safeway, or MSC.  Indeed, Velazquez

v. National Presto Industries, 682 F. Supp. 1499 (D. Haw. 1988),

and Alamida v. Wilson, 53 Haw. 398, 495 P.2d 585 (1972), cited by

Nordic, confirm that equitable subrogation is applicable only

when one party is liable for the debt of another to a third

party.  See Velazquez, 682 F. Supp. at 1505 (subrogation

applicable between two settling defendants); Alamida, 53 Haw. at

399, 495 P.2d at 585 (same).  Nordic seeks from Marsh

reimbursement of its defense costs and indemnity with respect to

the underlying claims.  See Third-Party Compl. ¶¶ 67-69, ECF No.

11.  Subrogation does not apply between Nordic and Marsh.

Marsh's Motion for Judgment on the Pleadings is granted as to

Count VI.

VIII.    <u>CONCLUSION.</u>

The court GRANTS IN RELEVANT PART the Insurers' Request for Judicial Notice.  With regard to the Insurers' Motion to Dismiss Counterclaim, the court GRANTS the motion as to Count I (breach of contract), Count II (duty of good faith and fair dealing), Count III (fraudulent and negligent misrepresentation), the portion of Count IV (bad faith) premised on fraud, and Count IV (declaratory relief).  The court DENIES the motion as to Count IV (bad faith) that is not premised on fraud.  Except with respect to the "occurrence" issue, which the court disposes of here on the merits, and Count V, which concerns only a form of relief, Nordic is given leave to amend its Counterclaim within three weeks of the date of this order.  The court DENIES the Insurers' Motion to Strike, DENIES Marsh's Motion to Dismiss or Stay and Nordic's Joinder, and GRANTS Marsh's Motion for Judgment on the Pleadings with respect to Counts V and VI of the Third-Party Complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 26, 2012.



_/s/ Susan Oki Mollway_____
Susan Oki Mollway
Chief United States District Judge

Illinois National Insurance Company et al. v. Nordic PLC Construction, Inc. f/k/a Nordic Construction, Ltd., Civ. No. 11-00515 SOM/KSC; ORDER (1) GRANTING IN RELEVANT PART COUNTERCLAIM DEFENDANTS' REQUEST FOR JUDICIAL NOTICE; (2) GRANTING IN PART AND DENYING IN PART COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM FILED OCTOBER 24, 2011, AND GIVING NORDIC LEAVE TO AMEND IN CERTAIN RESPECTS; (3) DENYING COUNTERCLAIM DEFENDANTS' MOTION TO STRIKE PORTIONS OF THE COUNTERCLAIM FILED OCTOBER 24, 2011;(4) DENYING THIRD-PARTY DEFENDANT MARSH USA, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS IN FAVOR OF PENDING STATE ACTION; (5) DENYING DEFENDANT AND THIRD-PARTY PLAINTIFF NORDIC CONSTRUCTION, INC., F/K/A NORDIC CONSTRUCTION LTD.'S SUBSTANTIVE JOINDER TO THIRD-PARTY DEFENDANT MARSH USA, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, STAY PROCEEDINGS IN FAVOR OF PENDING STATE ACTION; AND (6) GRANTING THIRD-PARTY DEFENDANT MARSH USA, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS ON COUNTS V AND VI OF DEFENDANT/THIRD-PARTY PLAINTIFF NORDIC PLC CONSTRUCTION, INC.'S THIRD-PARTY COMPLAINT FILED OCTOBER 24, 2011