IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, ET AL., | ) ) ) | CIVIL. NO. 11-00515 SOM/KSC |
| Plaintiffs, | ) ) | ORDER DENYING DEFENDANT'S MOTION TO CERTIFY QUESTION TO HAWAII SUPREME COURT |
| vs. | ) ) | |
| NORDIC PLC CONSTRUCTION, INC., | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION TO CERTIFY QUESTION
TO HAWAII SUPREME COURT**

**I.      INTRODUCTION.**

This case involves an insurance dispute arising out of alleged construction defects.  Before the court is a motion by Defendant/Counterclaim Plaintiff Nordic PCL Construction Inc. ("Nordic") to certify a proposed question to the Hawaii Supreme Court (the "Motion").  The court denies Nordic's Motion.

**II.      BACKGROUND.**

Plaintiffs/Counterclaim Defendants Illinois National Insurance Company and National Union Fire Insurance Company of Pittsburgh, PA (collectively, the "Insurers"), commenced this declaratory action seeking rulings concerning two insurance policies (the "Policies").  Nordic, the insured, was seeking coverage with respect to (1) work done to address alleged defects

in Nordic's construction of the Moanalua Shopping Center; and (2)
a construction defect lawsuit arising out of Nordic's
construction of a Safeway grocery store.[1]   ECF No. 1.   Nordic
counterclaimed against the Insurers.   ECF No. 10.

This court's first substantive ruling addressed, among
other issues, whether the Moanalua claim and the Safeway
litigation involved covered "occurrences."   ECF No. 69.   The
court determined that the alleged construction defects were not
"occurrences" as defined by either the Intermediate Court of
Appeals in Group Builders, Inc. v. Admiral Insurance Co., 123
Haw. 142, 231 P.3d 67 (Ct. App. 2010) ("Group Builders"), or the
Ninth Circuit in Burlington Insurance Co. v. Oceanic Design &
Construction, Inc., 383 F.3d 940, 944 (9th Cir. 2004)
("Burlington").   Id. at 15-16.   This court concluded: "Bound by
the Ninth Circuit's decision in Burlington, this court agrees
with the Insurers that the underlying damage was not caused by
any "occurrence" as defined in the main coverage provisions of
the Policies."   Id. at 16.

---

[1] The court has previously addressed the factual and procedural
background of this case at length.   See Order Granting
Counterclaim Defendants' Motion to Dismiss Counterclaim
Plaintiff's First Amended Counterclaim, ECF No. 119; Prior
Dismissal Order, ECF No. 69.   The court incorporates the facts
and procedural history set forth in its prior orders by reference
and repeats only the most salient details here.

The court further explained in that earlier order: "While Nordic and Marsh say the Ninth Circuit misconstrued Hawaii law, it is futile for them to seek this court's departure from the Ninth Circuit's analysis." Id. at 23. Finally, the court rejected Nordic's argument that House Bill No. 924, passed by the legislature as Act 83 in 2011, nullified Group Builders. Id. at 25-27.  Although the legislature noted that Act 83 was intended to restore insureds to their reasonable coverage expectations before Group Builders was decided in 2010, this court explained that the Ninth Circuit had decided Burlington in 2004, so it could not be said to have created new confusion or to have suddenly upset insureds' settled expectations when the Policies in issue in the present case were purchased in 2007.  Id. at 27.

Nordic and Third-Party Defendant Marsh USA, Inc. ("Marsh"), moved separately for reconsideration by this court. ECF Nos. 70 and 74.  This court denied both motions, reiterating that this court "continues to read Burlington as controlling." ECF No. 83 at 3.

On May 27, 2012, Nordic filed an amended counterclaim asserting, among other things, that contract-based construction defect claims triggered coverage pursuant to the "products-completed operations hazard" ("PCOH") provisions of the Policies

3

even without an occurrence.  ECF No. 84.  The Insurers moved to dismiss the amended counterclaim.  On October 31, 2012, this court issued an order that included a dismissal of the contract claim in Nordic's amended counterclaim on the grounds that PCOH coverage is subject to the same "occurrence" requirement as non-PCOH coverage.  ECF No. 119.

While the insurers' motion to dismiss the amended counterclaim was pending, Nordic filed the present Motion, seeking certification to the Hawaii Supreme Court of the following question (the "Question"):

> In light of Group Builders, Inc. v. Admiral Insurance Co., 123 Hawai`i 142, 231 P.3d 67 (2010), and Act of 2011, No. 83, 26th Leg., Reg. Sess. (2011), enacted as Haw. Rev. Stat. § 431:1-217, does a standard form ISO Commercial General Liability insurance policy that includes "Products/Completed Operations" coverage, in the absence of an applicable policy exclusion, provide coverage for claims of property damage to the completed work of an insured if such damage arises out of the deficient performance of a construction contract by the insured or its subcontractor?

ECF No. 104 at 5.  Nordic urges this court to certify its Question because Hawaii judicial decisions allegedly do not provide controlling precedent and the Hawaii Supreme Court's answer would determine the claims in this case.  Id. at 17-22. Nordic also claims that certification would conserve judicial

4

resources and promote cooperative federalism.  Id. at 22-28.  The court disagrees.

III.        STANDARD OF REVIEW.

        Whether a question should be certified to a state supreme court is a matter of judicial discretion.  See Riordan v. State Farm Mut. Auto Ins. Co., 589 F.3d 999, 1009 (9th Cir. 2009).  This court may certify a question to the Hawaii Supreme Court when: (a) there is a question concerning Hawaii law; (b) the question is determinative of the cause; and (c) there is no clear controlling precedent in Hawaii judicial decisions.  Haw. R. App. P. 13(a).  Certification is inappropriate when the law is "reasonably clear such that the court can readily predict how the Hawaii Supreme Court would decide the issue."  Saiki v. LaSalle Bank Nat'l Ass'n, 2011 WL 601139, at *6 (D. Haw. Feb. 10, 2011).  Moreover, "[t]here is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision."  Thompson v. Paul, 547 F.3d 1055, 1064-65 (9th Cir. 2008).  This is because "[a] party should not be allowed 'a second chance at victory' through certification by the appeals court after an adverse district court ruling."  Id.

IV.        **ANALYSIS.**

Nordic filed this Motion after the court had dismissed its original counterclaim and denied its reconsideration motion. See ECF Nos. 69 and 83.  In issuing these prior rulings, this court had to have found the applicable law reasonably clear.  See Saiki, 2011 WL 601139, at *6.  Having filed this motion only after this court had already ruled against it on the "occurrence" issue, Nordic must overcome the presumption against certification of a question addressed by an adverse ruling.  See Thompson, 547 F.3d at 1064-65.  Nordic does not succeed at overcoming the presumption.

Nordic begins its Motion by assuring the court that the Hawaii Supreme Court's response to its Question would satisfy Rule 13(a)'s requirement of being "determinative of the cause." Motion at 16.  While it is true that this necessary prerequisite for certification would be met with respect to the issue of whether the Policies do or do not provide coverage, that issue is not all there is to this lawsuit; Nordic's amended counterclaim included other claims that Nordic is now seeking to reassert via a pending motion for leave to file a second amended counterclaim.

It is not at all clear from the briefs filed in this lawsuit that Nordic satisfies the "determination of the cause"

requirement just because the response to the Question would determine the contract cause of action.  "Cause" might refer to the entire case, as opposed to one of the claims.  Thus, it has been said that "no man shall be a judge in his own cause," meaning that no man shall act as the judge in his own case. Treating "cause" as referring to a single cause of action would mean that the requirement would be satisfied even if other claims not affected by the Question might yield the same recovery. Nordic might, for example, prevail on a misrepresentation claim, and the damage award on such a claim might include amounts that could be recovered on a contract claim.  If that were to occur, the Hawaii Supreme Court might think it unnecessary or unwise for it to determine the contract issue.

Even if the Question would determine the "cause," certification also requires that there be no clear controlling precedent in Hawaii judicial decisions.  Nordic says, "At most, a federal court might consider itself bound to follow Burlington in the absence of a Hawai`i Supreme Court decision adopting a contrary rule."  Id. at 18.  Nordic follows this assertion with a lengthy footnote that asserts, "The vitality of Burlington is not settled even in this district."  Id. at n.6.  In support of this assertion, Nordic points to National Union Fire Insurance. Co. of

Pittsburgh, PA v. Simpson Manufacturing Co., 829 F. Supp. 2d 914,

924 (D. Haw. 2011) ("National Union"), decided by Judge Alan C.

Kay, and Evanston Insurance Co. v. Nagano, 2012 WL 3800320 (D.

Haw. Aug. 31, 2012), decided by Judge Leslie E. Kobayashi.  But

neither National Union nor Nagano even begins to question the

vitality of Burlington.  Rather, National Union says that "the

state of Hawaii insurance law is very much in flux given Group

Builders and H.B. 924 [Act 83]," but says nothing about

application of Burlington to policies issued before Group

Builders was decided or Act 83 passed.  The Nagano decision,

quoting this court's prior order in this case, rejected the idea

that any confusion concerning Burlington was warranted.  Nagano

involved policies issued in 2002, before Group Builders was

decided or Act 83 passed.  See Nagano, 2012 WL 3800320, at *14.

Nor is this court persuaded to certify the Question

based on Nordic's assertion that a state trial judge has recently

ruled in Nordic's favor on the "occurrence" issue.  This court

has only what has been submitted to it by the parties in that

regard.  Those submissions include transcript pages but no

written order.  The transcript pages do not appear to this court

to reflect a definitive legal ruling on the "occurrence" issue.

Instead, it appears to this court that the state trial judge was

saying that he could not determine whether there had been an occurrence because the factual record needed further development.

At most, the state trial judge indicated that <u>Group Builders</u> was not binding in the wake of Act 83.  <u>See</u> Transcript of Proceedings, 104-14 at 76.  As Nordic puts it, "Intermediate Court of Appeals decisions are of course binding on all lower courts in Hawai`i" but the trial court nevertheless "did not follow <u>Group Builders</u> because it perceived that Act 83 abrogated the analytical approach of <u>Group Builders.</u>"  Motion at 19.  This court remains "puzzled by Nordic's argument that a state trial court's decision, while admittedly not controlling, should stop this or any other trial court in its tracks."  Order Denying Motion for Reconsideration at 10.  That is, while urging this court not to follow the Hawaii ICA (or the Ninth Circuit), Nordic urges this court to follow a trial court.  Interestingly, that state trial court declined to allow the parties to present the "occurrence" issue to the Hawaii Supreme Court before the conclusion of the case.  <u>See</u> Motion at 13 ("Judge Chang declined to immediately reserve the 'Group Builders' question of law to the Hawai`i Supreme Court, however, commenting that there is a potential for multiple appeals in the case.").  Nordic now asks

this court to do, in essence, what the state trial judge would not do.

Notably, the very state case that Nordic points to does provide a vehicle for ultimate presentation of the "occurrence" issue to the Hawaii Supreme Court in the normal course. The pendency of that action makes it unnecessary for Nordic to have the Question certified. This court has, at present, no reason to think that trial, much less final judgment, in the present case will precede trial or final judgment in the ongoing state case.

Finally, Nordic argues that this court should certify the Question to conserve judicial resources and promote cooperative federalism. In making this argument, Nordic relies on Arizonans for Official English v. Arizona, 520 U.S. 43 (1997), which this court views as inapposite.

In Arizonans, a state employee filed a federal action against the state of Arizona and various state officials challenging Article XXVIII of the Arizona's constitution as violative of the First Amendment. Article XXVIII was a new provision that declared English the official language of Arizona. The employee said she feared that the provision would subject her to disciplinary action if she spoke Spanish at work. Id. at 49-50. The federal district court, finding Article XXVIII's

language "plain," denied the Arizona Attorney General's request to certify to the Arizona Supreme Court the question of how to construe Article XXVIII.  Id. at 56.  The district court then ruled that Article XXVIII was unconstitutional.  The Ninth Circuit affirmed.  The matter was then heard en banc by the Ninth Circuit, which again affirmed, holding that the provision was facially overbroad.  The Supreme Court dismissed the case for mootness, but not without criticizing both lower federal courts for having "refused to invite the aid of the Arizona Supreme Court because they found the language of [the Article] 'plain.'" Id. at 77.  The Court explained: "A more cautious approach was in order.  Through certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save time, energy, and resources and help build a cooperative judicial federalism."  Id. (internal quotations and alterations omitted).

Unlike the Arizonans case, this case does not require exploration of uncharted territory.  The issue raised by the Policies has been reviewed by the Ninth Circuit.  While Act 83 is new, it clearly provides that the law applicable before Group Builders remains in effect.  Burlington was not only decided before Group Builders, it discussed Hawaii law then in effect.

11

Nor would certification of the Question necessarily save time, money, or resources.  It may be that Nordic prevails on other claims that make Nordic whole, possibly more quickly and economically than if the present case were stayed while awaiting a response from the Hawaii Supreme Court to the Question and then unstayed for continued proceedings following that response.

Nordic's federalism argument is equally unavailing. All of the cases that Nordic cites in this regard address a district court's inability to predict how the state supreme court would rule.  This district court has such a prediction from the Ninth Circuit and from the ICA!

**V.        CONCLUSION.**

For the foregoing reasons, the court declines to certify the Question to the Hawaii Supreme Court.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 14, 2013



    /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Illinois National Insurance Company, et al. v. Nordic PLC Construction, Inc., 11-CV-0515 SOM-KSC, ORDER DENYING DEFENDANT'S MOTION TO CERTIFY QUESTION TO HAWAII SUPREME COURT