IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, INC., ET AL., | ) ) | Civ. No. 11-00515 SOM/KSC |
| | ) | |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS |
| vs. | ) ) | AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| | ) | AND MOTION TO DISMISS THE |
| NORDIC PCL CONSTRUCTION, INC., ET AL., | ) ) | SECOND AMENDED COUNTERCLAIM; ORDER DENYING MOTION TO |
| Defendants. | ) | STRIKE |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS AND
COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION
TO DISMISS THE SECOND AMENDED COUNTERCLAIM;
ORDER DENYING MOTION TO STRIKE**

I.        INTRODUCTION.

This is an insurance coverage dispute involving a

commercial general liability insurance policy (the "CGL Policy")

issued by Plaintiff Illinois National Insurance Company

("Illinois National") to defendant Nordic PCL Construction, Inc.

("Nordic").  The CGL Policy was in effect from May 1, 2007 to May

1, 2008.  Plaintiff National Union Fire Insurance Company

("National Union") issued an umbrella insurance policy to Nordic

for the same time period.

Nordic tendered the defense of two construction defect

claims to Illinois National and National Union (the "Insurers").

The first construction defect claim stemmed from a lawsuit filed

by Safeway, Inc. (the "Safeway Litigation").  The second

construction defect claim related to a claim against Nordic by

the developer of the Moanalua Shopping Center (the "Moanalua Claim").

The Insurers filed this action against Nordic seeking a declaratory judgment stating that they owe no duty to defend or indemnify Nordic with respect to either the Safeway Litigation or the Moanalua Claim.

Currently before the court are (1) the Insurers' Motion for Summary Judgment (ECF No. 120); (2) the Insurers' Motion to Dismiss the Second Amended Counterclaim (ECF No. 200); and (3) Nordic's Motion to Strike Portions of the Reply in Support of the Insurers's Motion to Dismiss the Second Amended Complaint (ECF No. 206).  The court grants in part and denies in part the first two motions, and denies the third.

## II.        BACKGROUND.

Throughout this litigation, the Insurers have contended that the construction defect claims in the Safeway Litigation and the Moanalua Claim do not involve "occurrences" that trigger coverage under the CGL Policy and the umbrella policy (collectively, the "Policies").[1]

---

[1] This court has previously set forth the factual and procedural background of this case at length.  See Order Granting Counterclaim Defendants' Motion to Dismiss Counterclaim Plaintiff's First Amended Counterclaim, ECF No. 119; Prior Dismissal Order, ECF No. 69.  The court incorporates the facts and procedural history set forth in its prior orders by reference and repeats only the most salient details here.

In this court's first substantive ruling in this case, the court addressed, among other issues, whether the Safeway Litigation and the Moanalua Claim involved covered "occurrences." ECF No. 69.  The court determined that Nordic's allegedly deficient performance of construction contracts was not an "occurrence" under either the CGL Policy or the umbrella policy. The term "occurrence" was the Intermediate Court of Appeals' focus in Group Builders, Inc. V. Admiral Insurance Co., 123 Haw. 142, 231 P.3d 67 (Ct. App. 2010) ("Group Builders"), and the Ninth Circuit's focus in Burlington Insurance Co. v. Oceanic Design & Construction, Inc., 383 F.3d 940, 944 (9th Cir. 2004) ("Burlington").  Id. at 15-16.  This court concluded: "Bound by the Ninth Circuit's decision in Burlington, this court agrees with the Insurers that the underlying damage was not caused by any "occurrence" as defined in the main coverage provisions of the Policies."  Id. at 16.

Rejecting Nordic's argument that, in Burlington, the Ninth Circuit misconstrued Hawaii law, the court said it was futile for Nordic "to seek this court's departure from the Ninth Circuit's analysis."  Id. at 23.  The court also rejected Nordic's argument that Act 83, passed by Hawaii's legislature in 2011, required the court to deviate from Burlington and Group Builders.  Id. at 25-27.  Although the legislature noted that Act 83 was intended to restore insureds to the coverage they had

reasonably expected to receive before Group Builders was decided in 2010, this court explained that the Ninth Circuit had decided Burlington in 2004, so it could not be said to have created new confusion or upset insureds' settled expectations with respect to the Policies in issue here, which were purchased in 2007.  Id. at 27.

Nordic and Third-Party Defendant Marsh USA, Inc., moved separately for reconsideration by this court.  ECF Nos. 70 and 74.  This court denied both motions, reiterating that this court "continues to read Burlington as controlling."  ECF No. 83 at 3.

On May 27, 2012, Nordic filed its First Amended Counterclaim asserting: (1) Count I: Breach of Contract; (2) Count II: Negligent Misrepresentations and Omissions of Material Fact; (3) Count III: Bad faith and Fraud; and (4) Count IV: Declaratory Relief.  ECF No. 84.  The Insurers moved to dismiss the First Amended Counterclaim, and this court issued an order that included a dismissal of the renewed contract claim in Nordic's amended counterclaim, which focused on "product completed operations hazard" ("PCOH") coverage.  This court ruled that, because PCOH coverage was subject to the same "occurrence" requirement as non-PCOH coverage, the PCOH insurance provisions did not cover allegedly defective performance of contractual obligations.  ECF No. 119.

On April 11, 2013, Nordic filed its Second Amended Counterclaim ("SACC") asserting: (1) Count I: Bad Faith; (2) Count II: Negligent Misrepresentation and Omission of Material Fact (pled in the alternative); (3) Count III: Equitable Estoppel (pled in the alternative); and (4) Count IV: Reformation.  ECF No. 198.  The Insurers have moved to dismiss the SACC.  On June 14, 2013, Nordic filed an ex parte motion to strike portions of the Insurers' reply memorandum in support of that motion.  ECF No. 206.  The Insurers' motion to dismiss the SACC is now before this court, together with their motion for summary judgment with respect to their own claims, and Nordic's motion to strike.

III.     STANDARD.

     A.     Summary Judgment Standard.

     The Insurers seek summary judgment with respect to their First Amended Complaint.  Summary judgment shall be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  Accordingly, "[o]nly admissible evidence may be considered in deciding a motion for summary judgment."  Miller v. Glenn Miller Prods., Inc., 454 F.3d

975, 988 (9th Cir. 2006).  Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See Celotex, 477 U.S. at 323.  A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden initially falls on the moving party to identify for the court "those portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323); accord Miller, 454 F.3d at 987.  "A fact is material if it could affect the outcome of the suit under the governing substantive law."  Miller, 454 F.3d at 987.

When the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything."  In such a case, the nonmoving party may defeat the motion for summary judgment without producing anything.  Nissan Fire, 210 F.3d at 1102-03.  On the other hand, when the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."  Miller, 454 F.3d at 987.  This means that the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead "must set forth specific facts showing that there is a genuine issue for trial." Porter v. Cal. Dep't of Corr., 419 F.3d 885, 891 (9th Cir. 2005) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). "A genuine dispute arises if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." California v. Campbell, 319 F.3d 1161, 1166 (9th Cir. 2003); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000) ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

### B. Motion to Dismiss Standard.

The Insurers also move to dismiss the SACC. Under Rule 12(b)(6), a court is generally limited to reviewing the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996). If matters outside the pleadings are

considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).  However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988.  Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  Id.  Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v.

<u>Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

To survive a Rule 12(b)(6) motion to dismiss, a claimant must make factual allegations sufficient to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact. <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). <u>Accord</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555 (internal citations omitted). The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 663.

As the Ninth Circuit has recently stated:

First, to be entitled to the presumption of truth, allegations in a complaint or

9

> counterclaim may not simply recite the
> elements of a cause of action, but must
> contain sufficient allegations of underlying
> facts to give fair notice and to enable the
> opposing party to defend itself effectively.
> Second, the factual allegations that are
> taken as true must plausibly suggest an
> entitlement to relief, such that it is not
> unfair to require the opposing party to be
> subjected to the expense of discovery and
> continued litigation.

Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), cert. denied,

132 S. Ct. 2101 (2012).

IV.     ANALYSIS.

        A.   Motion for Summary Judgment on the Complaint.

        The Insurers move for summary judgment with respect to

their Complaint.  The Complaint seeks a judgment providing that

the Insurers owe no duty to Nordic under the Policies in

connection with either the Safeway Litigation or the Moanalua

Claim.  The Insurers' summary judgment motion relies on the prior

rulings in this case that conclude that claims based on allegedly

deficient performance of a contract do not relate to an

"occurrence" and so do not trigger coverage.

        Nordic argues that the court's prior rulings do not

entitle the Insurers to summary judgment.  The gist of Nordic's

argument is that, with respect to the Safeway Litigation, the

Insurers "remain liable for providing a defense because the

underlying litigation includes independent tort claims (alleged

pre-contract negligence and negligent misrepresentation)."  Opp'n

at 2.  In particular, Nordic says that Safeway is suing it for having recommended that Safeway install VersaFlex products.

Safeway's Complaint, filed in the construction defect lawsuit in state court, includes the following allegations:

> In addition to the above-referenced representations, and in order to induce Plaintiff's selection of the VersaFlex Coating System over other vendors during the bidding process, Nordic, VersaFlex, and HNB proposed to Plaintiff a value engineering option of deleting the UV and color resistant aliphatic topic coat ("Aliphatic Top Coat") to the VersaFlex Coating System.  Nordic, VersaFlex and HNB represented to Plaintiff that the deletion fo the Aliphatic Top Coat would reduce the cost of the system without in any way impairing or reducing the integrity of the VersaFlex Coating System.

Compl. ¶ 27, ECF No. 160-15.

In Count VI of its Complaint, Safeway alleges:

> To induce action on the part of Plaintiff, Defendants made express and implied representations to Plaintiff, and/or omitted informing Plaintiff of material information regarding the failures described above including, among other things, representations that they had the knowledge and experience necessary to plan, manufacture, install, prepare, and/or construct the various parts of the Roof Deck.

Id. ¶ 79.

Nordic reads Safeway's allegations as including tort claims independent of the construction contract:

> Here, the underlying Complaint includes allegations that Nordic is liable for negligence and negligent misrepresentation

11

for, among other things, the ***pre-contract***
selection and use of a value engineering
option that allegedly caused defects in the
Roof Deck and resulting property damage to
Safeway.  Safeway alleged, among other
things, that Nordic proposed the deletion of
the "Aliphatic Top Coat" to the Safeway
store's waterproofing system

          . . . .

          Further, in its negligence count,
Safeway alleged that Nordic engaged in the
"negligent and defective . . . material
selection, . . . [and] preparation . . . of
the Roof Deck work and Products . . . ."  In
addition, Safeway claimed that Nordic was
liable for negligent misrepresentation
because "it made express and implied
representations to Plaintiff, and/or omitted
informing Plaintiff of material information
regarding the failures described above
including, among other things,
representations that [it] had the knowledge
and experience necessary to plan . . . [and]
prepare . . . the various parts of the Roof
Deck."  Safeway thereby claimed that Nordic's
alleged selection of the value engineering
option and its alleged representations as to
its expertise for such a task constituted
negligence and negligent misrepresentation.

          Importantly, the contract between
Safeway and Nordic is dated November 20,
2006.  The above alleged conduct, however,
took place before that date.

Id. at 15-16 (internal citations omitted).

          Nordic opined that, even if Safeway had ultimately

hired a different contractor to install the VersaFlex product,

Safeway could have sued Nordic for having, through

misrepresentation, caused Safeway to have the contractor install

the VersaFlex product.  According to Nordic, the

misrepresentation claim is therefore independent of the contract that Safeway and Nordic entered into.

After carefully reviewing the Safeway Complaint, the court concludes that the Safeway Complaint may include independent tort claims arising from alleged precontract statements by Nordic.  While the court remains mindful of Hawaii's "complaint allegation rule," Burlington, 383 F.3d at 944, the court notes that the Safeway Complaint is drafted in extremely broad language.  See, e.g., Compl. at ¶ 79, ECF No. 160-15.  At the very least, there is a potential that Nordic, if liable for alleged precontract misrepresentations independent of any actual contract between Nordic and Safeway, will be entitled to insurance coverage relating to such liability.  If the precontract statements cannot be seen as part and parcel of the actual contract, then they may relate to a covered "occurrence."

This court is not saying that any precontract statement gives rise to an independent tort claim.  In fact, most of the statements Nordic allegedly made before the contract was signed are unlikely to be actionable.  A representation that Nordic would do a good job, for example, would not support a tort claim independent of a breach of contract claim.  But the alleged representations concerning the VersaFlex product appear at least arguably not to have merged into the construction contract.

13

If a claim is even potentially covered, it gives rise to an insurer's duty to defend an insured against the claim.  See Commerce & Indus. Ins. Co. v. Bank of Hawaii, 73 Haw. 322, 326, 832 P.2d 733, 736 (explaining that the duty to defend arises when there is a potential for liability).

To the extent Nordic is arguing that the Insurers have a duty to defend in the Safeway Litigation with respect to the precontract negligent misrepresentation claim concerning the VersaFlex product, the court denies summary judgment on that issue at this juncture.  This necessarily means that the court declines to grant summary judgment on the issue of a duty to indemnify with respect to that claim.

However, with regard to the Moanalua Claim, the court grants summary judgment.  No precontract misrepresentation claim has been identified for this court in connection with the Moanalua Claim, and no need for a defense even posited.  The only issues the court is aware of with respect to the Moanalua Claim are contract-based and therefore do not concern any "occurrence."  As set forth in this court's earlier orders, the Insurers owe no duty to Nordic in the absence of an "occurrence."[2]

---

[2] Nordic asks this court to rule that Nordic may "re-tender" its request for a defense if a lawsuit is filed against it in connection with the Moanalua Claim.  Not knowing what such a lawsuit might allege, this court sees no basis for making any ruling in that regard.

14

In all respects other than a duty to defend with
respect to the negligence claims concerning alleged precontract
representations about the VersaFlex product, the court grants
summary judgment to the Insurers.

### B. Motion To Dismiss SACC.

#### 1. Count I (Bad Faith).

In Count I of the SACC, Nordic alleges bad faith by the
Insurers.  In particular, Nordic asserts that "Nordic and the
Insurers mutually intended that Nordic's payment of premiums and
the Insurers' issuance of the Policies would contractually
transfer the risk of Nordic's liability for Projects-related
property damage to or arising out of the work of its
subcontractors after completion of Nordic's work to the
Insurers."  SACC ¶ 38.  Nordic further claims that the Insurers
understood that the language of the Policies was "consistent
with" this intent.  Id. ¶ 39.  According to Nordic, the
Insurers's "duty of good faith and fair dealing toward Nordic
required them to issue an endorsement amending the Policies'
definition of 'occurrence' to conform to the parties' mutual
intent" following Group Builders.  Id. ¶ 46.  Nordic says: "By
refusing to provide the coverage that the parties mutually
intended would be provided, the Insurers are, unjustly and in bad
faith, enriching themselves at Nordic's expense."  Id. ¶ 49.

The Insurers move to dismiss Count I on the ground that
"[t]here is simply no basis or support for Nordic's contention
that an insurance company has an affirmative duty to amend a
policy — after it expires — in order to respond to a judicial
decision interpreting policy language."  Motion at 15-16.  The
court agrees.  However, Count I is not confined to positing an
affirmative duty to amend an insurance policy.

Hawaii law permits a bad faith claim even in the
absence of an entitlement to coverage.  Enoka v. AIG Hawaii
Insurance Co., Ltd., 109 Haw. 537, 128 P.3d 850 (2006), held that
an insured may sue an insurer for the bad faith mishandling of
the insured's claim even if the insurer is not obligated to pay
the insured any benefits.  Similarly, in Miller v. Hartford Life
Insurance Co., 126 Haw. 165, 176, 268 P.3d 418, 429 (2011), the
Hawaii Supreme Court said its decisions on the bad faith issue
were designed "to provide the insured with a vehicle for
compensation for all damages incurred as a result of the
insurer's misconduct, including damages for emotional distress,
without imposing a threshold requirement of economic or physical
loss."

Count I includes an assertion that the Insurers acted
in bad faith in not providing coverage that they and Nordic
allegedly agreed would be provided.  Unlike Nordic's previous
attempts at asserting a bad faith claim, this bad faith claim is

separable from the issue of insurance coverage.  This iteration
of Nordic's bad faith claim goes more broadly to the general
question of the parties' intent.  There may well be issues going
to what evidence will be admissible in this regard, but that is a
matter going to proof, not pleading.  Therefore, this count
dismisses the portion of Count I based on a duty to retroactively
amend a policy, but allows the remainder of the bad faith claim
in Count I to proceed.

> **2.   Count II (Negligent Misrepresentation and**
> **Omission of Material Fact).**

Count II alleges, "Under Hawaii law, insurers are
precluded from misrepresenting the benefits, advantages,
conditions, or terms of any insurance policy; and must exercise
reasonable care to disclose material information that they know
may justifiably induce the insured to act or refrain from
acting."  SACC ¶ 54.  Nordic further asserts that the Insurers
represented that "the Policies would provide coverage for
property damage arising out of construction defects."  Id. ¶ 55.

The Insurers move to dismiss Count II on the ground
that Nordic fails to comply with Rule 9(b) of the Federal Rules
of Civil Procedure, which requires a party to "state with
particularity the circumstances constituting fraud or mistake."
Motion at 19.  The Insurers say that the SACC "is silent as to
whether the Insurers' alleged statement was made fraudulently or
merely negligently."  Id.  The Insurers also complain that, "[b]y

remaining silent regarding the nature of the purported representation, Nordic now seeks to avoid the particularity requirement of Rule 9(b), and thereby withhold the identity of the person who allegedly made the misrepresentation." <u>Id.</u> at 20. The Insurers further argue that Count II is defective because Nordic's assertion that the Policies "<u>would</u>" provide coverage "relates to the occurrence of a future event, i.e., future coverage of a possible construction defect claim." <u>Id.</u> at 21. In the alternative, the Insurers argue that Count II fails because it is based on the tort of a "false promise," which Nordic should have pled with particularity under Rule 9(b). <u>Id.</u> at 22.

To the extent Nordic intended to assert fraud in Count II, the court agrees with the Insurers that Nordic fails to satisfy Rule 9(b). But a plain reading of Count II leads the court to conclude that Count II asserts negligent misrepresentation.

If Count II concerned a false representation that turned on the occurrence of a future event, that portion of Count II would not be viable. <u>See</u> <u>TSA, Int'l Ltd. v. Shimizu Corp.</u>, 92 Haw. 243, 255 (Haw. 1999) ("To be actionable, the alleged false representation must relate to a past or existing material fact and not the occurrence of a future event." (Emphasis and citation omitted)). However, the court reads Count II as referring to the

Insurers' coverage position at the time Nordic purchased the

policies.  As Nordic says:

> Under Count II, the Insurers were not
> required to disclose their predicted response
> to particular future claims – but their
> present position on the availability of
> coverage for an entire category of risk.
> Nordic alleges that the Insurers knew or
> should have known that a discrepancy existed
> between the Policies' actual scope of
> coverage and the scope expected by Nordic,
> and yet, the Insurers negligently misled
> Nordic into believing that no discrepancy
> existed.

Opp'n at 14.  While a coverage claim was a future event, Count II

focuses on the Insurers' then-existing coverage position.

In summary, Count II pleads a cognizable negligent

misrepresentation claim.

### 3.   Count III (Equitable Estoppel).

In Count III of the SACC, Nordic asserts that the

Insurers are estopped under Hawaii law from "asserting a defense

to coverage if the insurer or its agent made a misrepresentation

at the policy's inception that resulted in the insured being

prohibited from procuring the coverage that it desired."  SACC

¶ 69.  Nordic says that the Insurers promised that "the Policies

would provide coverage for property damage claims arising out of

construction defects" and, as a result, "Nordic refrained from

obtaining other policies that would provide coverage for property

damage claims arising out of construction defects."  Id. ¶ 72.

The Insurers argue that Count III is defective for six reasons: (1) Rule 9(b) requires a party to plead fraud with particularity; (2) Nordic's alleged reliance on the Insurers's statement must have been "reasonable"; (3) promissory estoppel is an equitable claim; (4) equitable remedies are not available when there is an express contract; (5) Nordic's contention that the Insurers promised that "the Policies would provide coverage for property damage arising out of construction defects" is barred by the parol evidence rule; and (6) a promissory estoppel claim requires a promise that is clear and unambiguous.  Motion at 28-31.

The court's view is that the allegations in Count III are insufficient.  In the first place, it is unclear whether what Nordic terms an "equitable estoppel" claim is actually a fraudulent concealment claim.  See Guerrero v. Gates, 357 F.3d 911, 920 (9th Cir. 2004) (equating equitable estoppel with fraudulent concealment and requiring particularity with respect to assertions of equitable estoppel).  If Nordic's equitable estoppel claim is grounded in fraud, then it must be pled with particularity pursuant to Rule 9(b).  Count III, however, is not supported by sufficiently particularized allegations.  To adequately identify the circumstances that allegedly constitute fraud, a plaintiff must identify "the who, what, when, where and how" of the alleged fraud.  Cooper v. Pickett, 137 F.3d 616, 627

(9th Cir. 1997) (internal quotation marks omitted).  Failure to satisfy Rule 9(b)'s requirements subjects a pleading to dismissal.  See <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1107-08 (9th Cir. 2003).

Nordic contends that any particularity requirement should be relaxed because the facts are peculiarly within the Insurers' knowledge.  However, Nordic must know what it relied on and how, when, and by whom matters were communicated to it. Nordic is not like a claimant who was unconscious when an unknown drug was administered.  Nordic says it relied on representations. It can certainly provide specifics of what it relied on, but has failed to do so.

If Count III is not asserting fraudulent concealment, then the contours of Nordic's equitable estoppel claim are fatally unclear.  Is Nordic simply repeating its negligent misrepresentation claim as an equitable claim for which no right to jury trial attaches?  The court agrees with Nordic that it may alternatively plead legal and equitable claims, but the claims must always be clear.  Count III is dismissed given its lack of clarity.

### 4.    Count IV (Reformation).

Count IV alleges that the parties "mutually intended" that the Policies "would provide coverage for property damage claims arising out of construction defects" and that the parties

21

"mutually believed that this intention was consistent with the
language contained in the four corners of the Policies." SACC
¶ 78. Nordic further contends that the parties were mutually
mistaken as to the meaning of the word "occurrence" and therefore
seeks reformation of the term "occurrence" in the Policies. Id.
¶¶ 79, 80, 82.

The Insurers argue that Count IV fails for three
reasons: (1) reformation is an equitable claim; (2) a claim for
reformation based on mutual mistake must be pled with
particularity as required by Rule 9(b); and (3) a successful
claim for mutual mistake of law is rare. Motion at 33-36.

Rule 9(b) requires the same particularity for "mistake"
as for fraud. Fed. R. Civ. P. 9(b)("In alleging fraud or
mistake, a party must state with particularity the circumstances
constituting fraud or mistake."). The court considers the
alleged mistake to have been sufficiently pled and permits Count
IV to proceed.

### C.   The Motion to Strike is Denied.

Nordic also moves to strike a portion of the reply memo
filed by the Insurers in support of their motion to dismiss the
SACC. See ECF Nos. 205 and 206. The portions of the reply memo
that Nordic seeks to strike are not dispositive of the motion to
dismiss. In any event, although declining to strike the

22

identified material, the court disregards it for the purpose of
the motion to dismiss.

**V.        CONCLUSION.**

For the foregoing reasons, the court grants in part and
denies in part the Insurers' Motion for Summary Judgment (ECF No.
120) and the Insurers' Motion to Dismiss the Second Amended
Counterclaim (ECF No. 200), and denies Nordic's Motion to Strike
Portions of the Reply in Support of the Insurers's Motion to
Dismiss the Second Amended Counterclaim (ECF No. 206).

As detailed above, summary judgment is granted to
Insurers with respect to their Complaint with the sole exception
of the portion of the Complaint seeking a declaration that the
Insurers owe no duty to defend or to indemnify Nordic with
respect to the portion of the Safeway Complaint asserting an
independent tort claim relating to alleged precontract negligent
misrepresentations by Nordic about the VersaFlex product.

With respect to the SACC, Count III (equitable
estoppel) is dismissed, as is the portion of Count I based on a
duty to retroactively amend an insurance policy.  The remainder
of Count I, the negligent misrepresentation claim in Count II,
and Count IV (reformation) remain in issue.

IT IS SO ORDERED.

DATED: Honolulu, July 31, 2013.



　　　　　　/s/ Susan Oki Mollway

Susan Oki Mollway

Chief United States District
Judge

Illinois National Insurance Company, et al. v. Nordic PCL Construction, Inc. et al., Civ. No. 11-00515 SOM/KSC; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS AND COUNTERCLAIM DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO DISMISS THE SECOND AMENDED COUNTERCLAIM; ORDER DENYING MOTION TO STRIKE