IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ILLINOIS NATIONAL INSURANCE COMPANY, an Illinois corporation; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation, | ) ) ) ) ) ) | CIVIL. NO. 11-00515 SOM/KSC<br><br>ORDER GRANTING INSURERS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE SECOND AMENDED COUNTERCLAIM'S BAD |
| Plaintiffs, | ) ) | FAITH CLAIM AND PUNITIVE DAMAGE REQUEST AND DENYING |
| vs. | ) ) ) | REMAINDER OF MOTION FILED BY INSURERS; ORDER DENYING MARSH'S COUNTERMOTION FOR |
| NORDIC PCL CONSTRUCTION, INC., f/k/a NORDIC CONSTRUCTION, LTD., a Hawaii corporation, | ) ) ) ) ) | SUMMARY JUDGMENT |
| Defendant. | ) ) | |

**ORDER GRANTING INSURERS' MOTION FOR SUMMARY JUDGMENT WITH
RESPECT TO THE SECOND AMENDED COUNTERCLAIM'S BAD FAITH
CLAIM AND PUNITIVE DAMAGE REQUEST AND
DENYING REMAINDER OF MOTION FILED BY INSURERS;
ORDER DENYING MARSH'S COUNTERMOTION FOR SUMMARY JUDGMENT**

I.        INTRODUCTION.

This is a dispute concerning insurance relating to

alleged construction defects at a newly constructed Safeway store

in Hawaii.  Defendant Nordic PCL Construction, Inc. ("Nordic"),

tendered the claim by Safeway to its insurance carriers under a

comprehensive general liability ("CGL") insurance policy with

Plaintiff Illinois National Insurance Company ("Illinois

National") and an umbrella insurance policy with Plaintiff

National Union Fire Insurance Company of Pittsburgh, PA

("National Union") (collectively, the "Policies" and the "Insurers").

The Insurers filed this action, seeking a declaration that they need not defend or indemnify Nordic with respect to Safeway's claims.  Nordic has filed a Second Amended Counterclaim ("SACC") against the Insurers, and a Third-Party Complaint against Marsh USA ("Marsh"), Nordic's insurance broker.  See ECF Nos. 198 and 11, respectively.

Before the court are the Insurers' motion for summary judgment with respect to the SACC, ECF No. 215, and Marsh's countermotion for summary judgment with respect to the comparative negligence claim asserted as the Insurers' tenth affirmative defense to the SACC, ECF No. 229.  The court grants the summary judgment motion with respect to the bad faith claim and punitive damage request, but denies the motion with respect to all other claims.  The court denies Marsh's countermotion on the ground that the affirmative defense is inapplicable to Marsh.

II.     **BACKGROUND.**

The facts relevant to this motion include the facts set forth in detail in this court's prior orders.  See ECF Nos. 69, 119, and 212.  Those facts are supplemented here only as necessary for the present ruling.

Nordic acted as a general contractor for the construction of a Safeway store and other retail establishments

2

in Kapahulu, a Honolulu neighborhood.  In January 2008, Safeway notified Nordic of alleged defects in its store's roof that caused water leaks and property damage.  SACC ¶ 10, ECF No. 198.

At that time, Nordic had a CGL policy and an umbrella policy with the Insurers.  See id. ¶¶ 7-8; see also Compl., ECF No. 1.  Specifically, in or around 2007, Illinois National issued Commercial General Liability Policy, number GL 161-68-33, to Nordic.  See CGL Policy, attached as Exhibit "A" to Compl., ECF No. 1-1.  In or around 2007, National Union issued a Commercial Umbrella Liability Policy, number BE 5685754, to Nordic.  See Umbrella Policy, attached as Exhibit "B" to Compl., ECF No. 1-2.

The CGL Policy provides, "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."  CGL Policy, PageID # 33.  The Umbrella Policy likewise states, "We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury or Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract.**"  Umbrella Policy, PageID # 80.

3

The CGL Policy's coverage "applies to 'bodily injury' and 'property damage' only if . . . [t]he 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory.'" CGL Policy, PageID # 33. The Umbrella Policy similarly applies if "the **Bodily Injury** or **Property Damage** is caused by an **Occurrence** that takes place anywhere, and the **Bodily Injury** or **Property Damage** occurs during the **Policy Period**." Umbrella Policy, PageID # 80.

Under the CGL Policy, "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." CGL Policy, PageID # 23. "In the event of continuing or progressive 'bodily injury' or 'property damage' over any length of time, such 'bodily injury' or 'property damage' shall be deemed to be one 'occurrence', and shall be deemed to occur only when such 'bodily injury' or 'property damage' first commenced." Id. The Umbrella Policy similarly defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one **Occurrence**." Umbrella Policy, PageID # 99.

In October 2008, Safeway sent a letter to Nordic, demanding that Nordic fix the leaking roof. Nordic tendered this claim to the Insurers. See SACC ¶ 10-12.

4

At the time Nordic and the Insurers entered into the respective Policies, the Ninth Circuit had already decided a case in which it predicted that, if the Hawaii Supreme Court examined the matter, it would rule that, for purposes of insurance coverage, construction defects were not "occurrences."  See Burlington Ins. Co. v. Oceanic Design & Constr., Inc., 383 F.3d 940, 948 (9th Cir. 2004).  Burlington reasoned that, in Hawaii, an occurrence "cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions."  Id. (quotation marks and citation omitted).  The Ninth Circuit held that, if an insured breached a contractual duty by constructing a substandard home, facing a lawsuit was a reasonably foreseeable result.  Id.

Notwithstanding Burlington, Nordic says it purchased the applicable Policies believing that they covered certain construction defect claims.  Glenn Kaneshige, Nordic's President since 1999, says that he has been familiar with completed operations insurance coverage for claims of post-completion construction defects since the mid-1990s.  See Decl. of Glen Kaneshige ¶¶ 1, 3-5, ECF No. 232-15.  Kaneshige says that Marsh was Nordic's insurance broker during this time and that Nordic relied on Marsh to procure completed operations coverage for construction defect claims arising out of work performed by its subcontractors, but not for Nordic's own deficient workmanship.

5

Id. ¶¶ 6-7.  Kaneshige says that, until the Intermediate Court of Appeals for the State of Hawaii ("ICA") decided Group Builders, Inc. v. Admiral Insurance Company, 123 Haw. 142, 231, 231 P.3d 67 (Ct. App. 2010), it was his understanding that the Policies obtained from the Insurers were "primarily intended to provide coverages for post completion construction defect claims."  Id. ¶ 10.  Group Builders adopted the reasoning in Burlington.

Kenneth Spence, Nordic's Treasurer/Secretary since 1987, says that he helped procure the Policies for Nordic.  He says that, until the Group Builders decision, he also thought that the Policies provided completed operations coverage for property damage arising out of Nordic's subcontractors' work. See Decl. of Kenneth L. Spence ¶¶ 2-9.

Nordic claims that part of its understanding came from Illinois National's proposal for the CGL Policy.  That proposal noted that the company's "integrated risk management programs feature high limits and flexible underwriting, allowing our clients to minimize coverage gaps, thus protecting them against almost any type of construction risk they may confront."  See ECF No. 232-17, PageID # 7323.

Nordic also argues that, because National Union's umbrella policy application asked about claims for construction defects, see ECF No. 232-18, PageID # 7344, the Insurers must

6

have taken those into account in determining their potential liability under the Policies.

Marsh prepared an insurance summary in July 2007 that indicated that the Policies excluded coverage for "Work (Property Damage to the Insured's Work)" done by Nordic, but that the exclusions did not apply to work performed by a subcontractor. See ECF No. 232-19, PageID # 7363.  The current record does not reflect why Marsh had such an understanding of the scope of the Policies' coverage.

Nordic claims that its understanding that it was purchasing coverage for defective work by its subcontractors was consistent with the Insurers' actions.  For example, on or about April 21, 2009, John Edwards, on behalf of "AIG Domestic Claims, Inc. for Illinois National Insurance Company," sent Nordic a letter stating that Illinois National was investigating the Safeway claim and would provide Nordic with a defense to that claim under a reservation of rights.  See ECF No. 232-23, PageID # 7414.  It noted that claims for breach of contract and claims of defects would not be "occurrences" for purposes of the CGL Policy, but did not specifically mention Burlington.  Id., PageID # 7415.

In an "Activity Note" written by John Edwards on or about April 10, 2009, Edwards discussed a mediation of the Safeway claim that was to occur on April 13, 2009.  Nothing in

the "Activity Note" indicates that Illinois National thought the claim was outside the scope of coverage; the document says only that no defects with workmanship had been shown.  See ECF No. 232-25, PageId # 7421.

According to Nordic, its understanding concerning coverage for defective workmanship by subcontractors is consistent with the Insurers' conduct in other cases.  For example, in 2006, Lexington Insurance Company offered to settle claims in a separate proceeding involving defective workmanship claims.  See Sealed Exs. O, P, and Q, redacted versions of which have been filed as ECF Nos. 248-1, -2, and -3.  There appears to be no dispute that Lexington Insurance Company and the Insurers are part of the family of insurers constituting the American International Group, Inc. ("AIG").  See Insurers' Corporate Disclosure Statement, ECF No. 3, PageID # 167; Unconditional Capital Maintenance Agreement, ECF No. 160-6.  However, the record does not suggest that Lexington and the Insurers are somehow inseparable.

On September 11, 2011, Daniel F. Conway, National Union's corporate designee in a case brought in state court, testified in his Rule 30(b)(6) deposition that construction defect claims on condominium projects were substantially greater after completion of the project.  See ECF No. 232-33 at 31-32, PageID # 7468.  When asked whether "insurance for post completion

construction defect claims on condominiums is one of the benefits which your company offered to developers," Conway indicated that National Union offered such insurance.  Id. at 33, PageID # 7468. Conway agreed that the National Union policy at issue in that case covered property damage caused by construction defects.  Id.

Jeff Richards, the underwriter for Nordic's CGL Policy, says he reviewed the underwriting materials relating to both Policies and found no indication in those materials that anyone on behalf of the Insurers told Marsh or Nordic that the Policies would provide insurance coverage for property damage arising out of Nordic's subcontractors' work.  Richards says that he made no such representations.  See Decl. of Jeff Richards ¶¶ 2, 18-19, ECF No. 215-11.  Richards, however, does not explain what the Insurers' understanding of the scope of coverage was at the time the Policies were issued.

On May 19, 2010, the ICA decided Group Builders.  The ICA noted that authorities were split as to whether defective workmanship was an "occurrence" for purposes of a CGL policy. The ICA further noted that the majority of jurisdictions held that claims of poor workmanship were not such "occurrences."  See 123 Haw. at 148, 231 P.3d at 73.  The ICA adopted the majority position and held that, "under Hawai'i law, construction defect claims do not constitute an 'occurrence' under a CGL policy.

Accordingly, breach of contract claims based on allegations of shoddy performance are not covered under CGL policies." Id.

After the ICA decided Group Builders, the Insurers appear to have assigned all pending Hawaii cases to one of their employees for consistency in handling. See E-Mail from Michael Bahleda to Michael Barnett (July 14, 2010), ECF No. 232-29, PageID # 7448. In subsequent mediation proceedings, the Insurers then took the position that no money would be offered to Safeway in settlement in light of Group Builders. See ECF No. 232-30, PageID # 7449.

In a letter to Nordic dated March 30, 2011, Jolie Lehmann, a senior analyst with respect to Illinois National's CGL Policy with Nordic, again indicated that it was providing a defense of the Safeway claim under a reservation of rights. See ECF No. 232-32, PageID # 7455. The letter stated that Safeway's claims were for defective workmanship that did not qualify as an "occurrence" based on Hawaii case law. Id.

III.    **LEGAL STANDARD.**

The summary judgment standard was set forth in this court's order of July 31, 2013. See ECF No. 212, PageID #s 6266-68. That standard is incorporated herein by reference.

10

IV.      ANALYSIS.

   A.   Count I of SACC (Bad Faith).

        Count I of the SACC asserts that the Insurers breached
the covenant of good faith and fair dealing implied in all
contracts.  In so doing, the SACC asserts the tort of bad faith.
Paragraphs 38 and 39 of the SACC allege that, when the Policies
were entered into, both Nordic and the Insurers believed that the
Policies covered liability for property damage to or arising out
of the work of Nordic's subcontractors.  Paragraph 40 of the SACC
alleges that the parties had this understanding notwithstanding
the Ninth Circuit's Burlington decision, which issued in 2004,
before Nordic purchased the Policies.

        Nordic reads Hawaii law as requiring an insurer to act
in good faith in dealing with an insured, and as providing that a
breach of that duty is an independent tort.  See SACC ¶ 45; Best
Place, Inc. v. Penn Am. Ins. Co., 82 Haw. 120, 132, 920 P.2d 334,
346 (1996).  Nordic asserts that the Insurers' reliance on
intervening case law to deny coverage that the parties mutually
intended the Policies would provide is a breach of the Insurers'
duty to act in good faith.

        Given this court's earlier rulings in this case, Nordic
is not arguing in Count I of the SACC that the Insurers have
acted in bad faith by unreasonably denying insurance coverage in
contravention of the express language of the Policies.  Instead,

11

Nordic is complaining that the Insurers are liable for having
changed their position as to coverage in light of Group Builders.
Nordic argues that, because, at the time the Policies were
entered into, both Nordic and the Insurers believed the Policies
covered claims arising out of defective work by Nordic's
subcontractors, the Insurers could not in good faith latch onto
Group Builders to deny that very coverage.

   The obligation to deal in good faith is a well-
established principle in Hawaii contract law.  See Best Place, 82
Haw. at 124, 920 P.2d at 338 (citing Restatement (Second) of
Contracts § 205 (1979) ("Every contract imposes upon each party a
duty of good faith and fair dealing in its performance and its
enforcement.")).  The Intermediate Court of Appeals for the State
of Hawaii has expressly noted that parties have a duty of good
faith and fair dealing in performing contractual obligations;
such good faith "emphasizes faithfulness to an agreed common
purpose and consistency with the justified expectations of the
other party."  Hawaii Leasing v. Klein, 5 Haw. App. 450, 456, 698
P.2d 309, 313 (App. 1985) (citing Restatement (Second) of
Contracts § 205, cmt. a).  "Thus, a party who evades the spirit
of the contract, willfully renders imperfect performance, or
interferes with performance by the other party, may be liable for
breach of the implied covenant of good faith and fair dealing."
23 Williston on Contracts § 63:22 (4th ed.) (quotation marks,

alterations, and citation omitted); see also Restatement (Second) of Contracts § 205, cmt d ("A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.").

This court has noted that a breach of the implied covenant of good faith and fair dealing is a claim in the nature of assumpsit. See Skanning v. Sorenson, 2009 WL 5449149, *6 n.4 (D. Haw. Dec. 10, 2009). In most breach of contract actions in Hawaii, tort damages are not available. See Francis v. Lee Enterprises, Inc., 89 Haw. 234, 971 P.2d 707 (1999) (determining that Hawaii law does not recognize a cause of action for tortious breach of an employment contract). In Francis, the Hawaii Supreme Court determined that Hawaii law does not allow tort damages "in the absence of conduct that (1) violates a duty that is independently recognized by principles of tort law and (2) transcends the breach of the contract." Id. at 235, 971 P.2d at 708. Instead, contract-based damages are "limited to those within the contemplation of the parties when the contract was entered into or at least reasonably foreseeable by them at the time; consequential damages beyond the expectations of the

13

parties are not recoverable." Id. at 239-40, 971 P.2d at 712-13 (quotation marks and citation omitted). "Thus, damages for emotional distress and mental suffering, as well as punitive damages, are generally *not* recoverable in contract." Id. at 240, 971 P.2d at 713. The Hawaii Supreme Court recognized two exceptions--when emotional distress arising out of a contract is accompanied by a bodily injury (e.g., in a medical malpractice context) or when the nature of a contract makes serious emotional disturbance particularly foreseeable (e.g., with a promise to marry or to prepare a body for burial). Id.

Although Hawaii law generally does not recognize a tortious breach of contract claim, the Hawaii Supreme Court has recognized the tort of bad faith in the first- and third-party insurance context. See Best Place, 82 Haw. at 132, 920 P.2d at 346 ("we hold that there is a legal duty, implied in a first- and third-party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action"). The court grounded that decision in the "atypical" relationship between the insurer and the insured, stating:

> Adopting the tort of bad faith is consistent
> with the case law and statutory provisions
> dealing with insurer misconduct in this
> jurisdiction. In addition, the special
> relationship between insurer and insured is
> . . . atypical, and the adhesionary aspects
> of an insurance contract further justify the
> availability of a tort recovery. Finally, a

14

> bad faith cause of action in tort will
> provide the necessary compensation to the
> insured for all damage suffered as a result
> of insurer misconduct.  Without the threat of
> a tort action, insurance companies have
> little incentive to promptly pay proceeds
> rightfully due to their insureds, as they
> stand to lose very little by delaying
> payment.

Id.

The Hawaii Supreme Court explained that "the tort of bad faith is not a tortious breach of contract, but rather a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract."  Id. at 131, P.2d at 345.  The tort of bad faith therefore allows an insured to be awarded damages even when the insurer complies with the covenant to pay claims.  Id.  Such damages may be awarded when the insurer's "conduct damages the very protection or security which the insured sought to gain by buying insurance."  Id. at 132, 920 P.2d at 346.  To demonstrate bad faith, an insured "need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured.  An unreasonable delay in payment of benefits will warrant recovery for compensatory damages."  Id.  However, when an insurance carrier denies coverage based on a reasonable interpretation of an insurance contract or even an erroneous decision not to cover a claim, the insurance carrier

15

does not act in bad faith.  Id.  Instead, to support a bad faith

claim, an insurer must have acted in bad faith.  Id.

In Enoka v. AIG Hawaii Insurance Company, 109 Haw. 537,

128 P.3d 850 (2006), the Hawaii Supreme Court examined the

circumstances in which a bad faith claim could be maintained when

an insurance company had concluded that a statute of limitation

barred a claim.  The Hawaii Supreme Court drew a distinction

(1) between an insurer that failed to investigate a claim that

was barred by the clear and unambiguous language of an insurance

policy, and (2) an insurer that allegedly mishandled a claim.

The Hawaii Supreme Court noted that, in the first situation, an

insured could not recover for the tort of bad faith arising out

of an insurer's failure to investigate if the insured could not

establish the insurer's liability with respect to the underlying

policy.  By contrast, the Hawaii Supreme Court noted that an

insurer must act in good faith in dealing with its insured and in

handling an insured's claim, even when a policy clearly and

unambiguously excludes coverage.  The Hawaii Supreme Court held

that a bad faith claim for the mishandling of a claim does not

necessarily fail when the insurer demonstrates that no coverage

is available under a policy.  Id. at 551-52, 128 P.3d at 864-65.

As it turns out, the Supreme Court in Enoka determined that the

insurer's denial of coverage based on the statute of limitation

16

was reasonable and therefore not in bad faith.  Id. at 552-53, 128 P.3d at 865-66.

Whether an insurer has acted in bad faith is generally a question of fact.  See Willis v. Swain, 129 Haw. 478, 496, 304 P.3d 619, 637 (2013).  However, reasonableness can constitute a question of law for summary judgment purposes "when the facts are undisputed and not fairly susceptible of divergent inferences, because, where, upon all the evidence, but one inference may reasonably be drawn, there is no issue for the jury."  Id. (quotation marks and citation omitted).

There clearly are questions of fact here, but they are not material to resolution of the bad faith claim on the present motion.  First, there are questions of fact as to the scope of coverage that the Insurers intended to provide when they accepted Nordic's premiums, and as to whether, based on Group Builders, the Insurers changed their original coverage interpretation.  In its order of October 31, 2012, the court determined that, although defective work does not constitute an "occurrence," the Policies might still provide some insurance coverage.  See ECF No. 119, PageID # 3407.  The Insurers themselves agree that the Policies cover physical injuries to third persons arising out of defective work.  But this limited coverage does not address Nordic's contention that the Insurers are departing from their earlier intent to treat a construction defect as an "occurrence."

17

The Insurers also argue that their underwriter, Richards, never told Marsh or Nordic that the Policies would cover all property damage arising from Nordic's subcontractors' work.  That is the very point Nordic is trying to make--that based on the state of the industry in Hawaii at the time the Policies were entered into, Nordic and the Insurers thought it went without saying that the word "occurrence" included claims of defective work by Nordic's subcontractors.  The record before this court does not permit a determination as to whether the Insurers intended to provide coverage for the defective work of Nordic's subcontractors and deviated from that intention after the ICA subsequently issued the Group Builders decision.  Because Hawaii law permits a bad faith claim even in the absence of an entitlement to coverage, see Enoka, 109 Haw. 537, 128 P.3d 850 (2006), Nordic may sue the Insurers for any bad faith in the handling of Nordic's claim, even if, pursuant to Burlington and Group Builders, the Insurers are not obligated to provide coverage under the Policy.

In short, acknowledging that there are these questions of fact as to the intended scope of coverage does not end the court's analysis of the Insurers' summary judgment motion.  Any question of fact must be material to the issues at hand to defeat summary judgment.  Here, there is no material question of fact.

The Insurers base their position that no coverage for construction defects is available under the Policies on section 431: 1-217(a) of Hawaii Revised Statutes, effective June 3, 2011, which states:

> For purposes of a liability insurance policy that covers occurrences of damage or injury during the policy period and that insures a construction professional for liability arising from construction-related work, the meaning of the term "occurrence" shall be construed in accordance with the law as it existed at the time that the insurance policy was issued.

The Insurers argue that, given section 431: 1-217(a), they are required to interpret the Policies in accordance with the Ninth Circuit's 2004 Burlington decision.  Because no coverage is available under Burlington, the Insurers argue that their conduct with respect to defending the Safeway litigation under a reservation of rights reflects Hawaii law and is therefore reasonable and not in bad faith.

Even assuming the Insurers believed at the time the Policies were entered into that the Policies' use of "occurrence" covered property damage caused by subcontractors' defective work, the Insurers did not act in bad faith when they provided Nordic with a defense in the Safeway action subject to a reservation of rights and filed this action seeking a declaration that there was no coverage under the Policies given Burlington.  As described in this court's earlier orders, the Policies did not provide

19

coverage for the defective work of Nordic's subcontractors.  On the present motion, Nordic has failed to demonstrate bad faith in the handling of Nordic's claim.  See Enoka, 109 Haw. 537, 128 P.3d 850.  At most, Nordic shows that the Insurers may have retracted their belief that defective work was covered by the Policies upon learning of case law stating that such coverage did not exist.  Given Hawaii law providing that an insurer that denies coverage based on an open question of law does not act in bad faith, Enoka 109 Haw. at 552, 128 P.3d at 865, an insurer that actually relies on governing law, even if the insurer only belatedly learns of the law, cannot be said to thereby act in bad faith.  This is a matter of law that controls the result even in the face of the questions of fact that the court has recognized in the preceding paragraphs.  Those questions are simply immaterial.

Nordic does not save the day by contending that the Insurers have "evaded the spirit of the bargain."  Evasion of the spirit of a bargain is a specific example of a violation of good faith performance of a contract recognized by the Restatement (Second) of Contracts § 205, comment d.  However, evading the spirit of a bargain between an insurer and an insured does not amount to a tort for which tort damages are available under Hawaii law in the absence of bad faith.  See Best Place, 82 Haw. at 133, 920 P.2d at 347 (requiring bad faith conduct to support

the tort of bad faith).  Nordic is trying to apply a contract principle set forth in the Restatement (Second) of Contracts to a tort claim.  In the present case, that is not an application supported by law.

What the court concludes here is that reliance on governing case law to deny coverage is not bad faith if indeed coverage is unavailable under that case law, even if the reliance constitutes a change in position and thus might be said to be an evasion of the spirit of a bargain.  Such conduct may form the basis of other claims, but not of a bad faith claim.  To rule otherwise would be to expose parties to bad faith liability just for belated discovery of what the law provides.  Bad faith requires more than a mistake about the law.  The court's ruling here is consistent with section 431:1-217(a).  That statute, recently enacted by the Hawaii legislature, requires the reading of a liability insurance policy "in accordance with the law as it existed at the time that the insurance policy was issued." Treating <u>Burlington</u> as law in existence when the Policies issued, this court views the present ruling as to the bad faith claim as consistent with that statute.  Indeed, were the court to view the Insurers' alleged conduct as bad faith, the court might well be flouting the statute.

### B.   Count II of SACC (Negligent Misrepresentation and Omission of Material Fact).

#### 1.   Negligent Misrepresentation.

Count II of the SACC asserts an alternative claim for relief under the title "Negligent Misrepresentation and Omission of Material Fact."  In Hawaii, a negligent misrepresentation claim requires that: "(1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation."  Blair v. Ing, 95 Haw. 247, 269, 21 P.3d 452, 474 (2001) (citing Restatement (Second) of Torts § 552).

Count II of the SACC alleges that the Insurers knew that contractors such as Nordic expected insurance policies to cover claims for property damage arising out of their subcontractors' work.  See SACC ¶ 56(a).  It alleges that, although the Ninth Circuit had decided Burlington in 2004, it was not commonly believed that the Hawaii courts would follow Burlington.  Id. ¶¶ 56(b) to (c).  Count II alleges that CGL policies were routinely underwritten, priced, and issued after Burlington without clarifying the meaning of "occurrence."  Id. ¶ 56(d).  Nordic claims that, even after Burlington was decided in 2004, insurers routinely defended and settled claims regarding

property damage arising out of subcontractors' work.  Id.
¶ 56(e).

The SACC further alleges that the Insurers took into
account claims of post-completion property damage caused by the
work of Nordic's subcontractors when calculating the Policies'
premiums.  Id. ¶ 58.  According to the SACC, the Insurers did
nothing to deter Nordic from assuming that such claims were
covered.  Id. ¶ 63.  The Insurers allegedly failed to disclose
their intention at the time they issued the Policies to deny
coverage based on Burlington (as later modified by Group Builders
and section 431: 1-217(a)).  The SACC alleges that Nordic relied
on this circumstance to its detriment and that Nordic could have
negotiated for an endorsement when it paid the $400,000+
insurance premium, or could have purchased such insurance from a
different carrier.  See SACC ¶¶ 59-67.

The Insurers initially seek summary judgment on the
negligent misrepresentation claim asserted in the SACC by arguing
that their supposed representation regarding coverage was not
false.  In other words, the Insurers say that they made no false
representation.  They argue that the Policies covered claims by a
third party (e.g., a shopper at Safeway) who might be injured or
have property damaged by a Nordic subcontractor's defective work.
See ECF Nos. 61, Page ID # 1595, and 215-1, PageID # 6343.  Even
assuming the Policies covered some claims, that does not mean

that there was no negligent misrepresentation.  Nordic paid a
$154,056 premium for "CONTRACTORS--SUBCONTRACTED WORK--IN
CONNECTION WITH CONSTRUCTION, RECONSTRUCTION, REPAIR OR ERECTION
OF BUILDINGS NOC."  See ECF No. 1-1, PageID # 12.  The premium
amount raises a question of fact as to whether the Policies
covered only damages to third parties caused by subcontractors'
defective work.  The Insurers' concession that some coverage is
available does not mean the scope of the coverage was accurately
represented.

     The Insurers argue that Nordic's negligent
misrepresentation claim fails because it does not relate to a
past or existing material fact.  In so arguing, the Insurers cite
cases concerning claims grounded in fraud.  See TSA, Int'l Ltd.
v. Shimizu Corp., 92 Haw. 243, 255, 990 P.2d 713, 725 (1999)
(discussing a fraudulent misrepresentation claim); and Stahl v.
Balsara, 60 Haw. 144, 149, 587 P.2d 1210, 1214 (1978) (discussing
fraud claim); see also Mayes v. NW. Mut. Life Ins. Co., 1997
Dist. LEXIS 22984, *16-*17 (D. Haw. 1997) (same).  In Honolulu
Federal Savings & Loan Association v. Murphy, 7 Haw. App. 196,
201-02, 753 P.2d 807, 812 (Ct. App. 1988), the Intermediate Court
of Appeals, while noting that fraud cannot generally be
predicated on statements that are promissory in nature that
relate to future actions or conduct, said that a "promise
relating to future action or conduct will be actionable, however,

24

if the promise was made without the present intent to fulfill the promise." Id.  This exception was adopted by the Hawaii Supreme Court in Pancakes of Hawaii, Inc. v. Pomare Properties Corporation, 85 Haw. 300, 312, 944 P.2d 97, 109 (1997), and in Hawaii Community Federal Credit Union v. Keka, 94 Haw. 213, 230, 11 P.3d 1, 18 (2000).

The past or existing fact requirement recognized in cases involving fraudulent misrepresentation claims appears to apply in the negligent misrepresentation context as well.  "A misrepresentation that is the basis of a claim for negligent misrepresentation must be of a fact that either exists in the present or has existed in the past, and a claim for negligent misrepresentation generally cannot be based on unfulfilled promises or statements as to future events."  37 C.J.S. Fraud § 76 (Westlaw 2013).  Section 76 further states that, although a claim for negligent misrepresentation "must be factual and not promissory or related to future events," "a speaker's statement of what he or she will do in the future may constitute a representation of the speaker's present intention, which may support an action for negligent misrepresentation." Id.; see also Abercrombie v. Nationwide Mut. Ins. Co., 999 F. Supp. 660, 664 (D. Md. 1998) ("a statement concerning future events, such as Plaintiff's ability to continue the private practice of law, may support a claim for fraud or negligent misrepresentation if it

relates to matters within the speaker's exclusive control, rather than an expectation or prediction of future events"), aff'd, 168 F.3d 481 (4th Cir. 1999).

Given the Hawaii Supreme Court's recognition of fraud claims based on a promise relating to future conduct when there is no present intent to fulfill the promise, it is likely that the Hawaii Supreme Court would also recognize a negligent misrepresentation claim based on a speaker's present intention to do or not do something in the future, especially when the speaker's intent pertains to matters within the speaker's control.  Accordingly, to the extent Nordic bases its negligent misrepresentation claim on the Insurers' alleged indication when issuing the Policies that future claims arising out of defective work by Nordic's subcontractors would be covered, the claim is actionable.  While the Insurers' alleged representations related to events that might occur in the future, the representations allegedly concerned the Insurers' intent at the time to take actions within their own control.

The Insurers also argue that they should be granted summary judgment on the negligent misrepresentation claim because Nordic was not justified in believing that the Policies covered Nordic's subcontractors' defective work.  The Insurers say that Nordic could have easily discovered Burlington and determined that no such coverage existed.  Nordic's opportunity to discover

Burlington and to determine that coverage might not exist does not, without more, preclude a negligent misrepresentation claim.

In Group Builders, the ICA noted that there was a split of authority as to whether defective workmanship is an "occurrence" for purposes of a CGL policy.  The ICA further noted that the majority of jurisdictions hold that claims of poor workmanship are not "occurrences."  123 Haw. at 148, 231 P.3d at 73.  A Ninth Circuit prediction as to how the Hawaii Supreme Court will rule does not preclude reliance on past practices and understandings, especially when insurance companies allegedly continued to provide coverage for such claims and the Insurers may have based their premiums on such coverage.  Accordingly, a question of fact as to whether Nordic's reliance on the alleged misrepresentation was justified precludes summary judgment on this issue.

Finally, the Insurers argue that the court should bar any recovery for negligent misrepresentation because, under the contributory negligence principles set forth in section 552A of the Restatement (Second) of Torts, "The recipient of a negligent misrepresentation is barred from recovery for pecuniary loss suffered in reliance upon it if he is negligent in so relying." Comment a to that section explains:

> The recipient of a fraudulent
> misrepresentation who justifiably relies upon
> it is not barred from recovery by his
> contributory negligence in doing so. (See

27

> § 545A).  But when the misrepresentation is not fraudulent but only negligent, the action is founded solely upon negligence, and the ordinary rules as to negligence liability apply.  Therefore the contributory negligence of the plaintiff in relying upon the misrepresentation will bar his recovery. This means that the plaintiff is held to the standard of care, knowledge, intelligence and judgment of a reasonable man, even though he does not possess the qualities necessary to enable him to conform to that standard.

The court is not persuaded by this argument.

As noted in comment a to section 552A, ordinary rules as to negligence liability apply to claims of negligent misrepresentation.  In Hawaii, the legislature has abolished the common law principle of contributory negligence, adopting instead comparative negligence for damage claims arising out of bodily injury or property damage.  See Haw. Rev. Stat. § 663-31(a):

> Contributory negligence shall not bar recovery in any action by any person or the person's legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

Another judge in this district refrained from determining that comparative negligence rather than contributory negligence principles apply to negligent misrepresentation claims.  See

<u>Honolulu Disposal Serv., Inc. v. Am. Benefit Plan Adm'rs, Inc.</u>, 433 F. Supp. 2d 1181, 1188 (D. Haw. 2006) (Seabright, J.).  This court now predicts that, in the insurance context, when coverage is sought for bodily injury or property damage, the Hawaii Supreme Court will apply the comparative negligence principles set forth in section 663-31(a), as that would be consistent with Hawaii's treatment of negligence claims.  Accordingly, even assuming Nordic was negligent in not realizing that the Policies did not provide the coverage it wanted (or for relying on Marsh in that regard), that negligence might not preclude at least some recovery against the Insurers.

The court leaves the negligent misrepresentation claim for trial.

## 2.    Negligent Omission.

To the extent Count II includes a negligent omission claim, the Insurers argue that it is a "fraudulent nondisclosure" claim with respect to which the Insurers are entitled to summary judgment.  At the hearing, Nordic explained that it is asserting a negligent omission claim, as pled in the SACC.  Accordingly, the Insurers' motion is denied to the extent it argues that the court should apply a "fraudulent nondisclosure" standard to Count II.

### C.   Count IV (Reformation).

Count IV of the SACC seeks reformation of the Policies, alleging that there was a mutual mistake as to whether the Policies covered claims that both parties believed were covered. Under Hawaii law, "reformation may be had when the written instrument does not, through a mutual mistake of fact, conform to the intention of the parties to the instrument." State v. Kahua Ranch, Ltd., 47 Haw. 28, 33, 384 P.2d 581, 585 (1963); see also Application of Mokuleia Ranch & Land Co., 59 Haw. 534, 539, 583 P.2d 991, 994 (1978). Accord Watson v. U.S. Fidelity & Guar. Co., 427 F.2d 1355, 1357 (9th Cir. 1970) ("But reformation is not a proper remedy for the enforcement of terms to which the defendant never assented; it is a remedy the purpose of which is to make a mistaken writing conform to antecedent expressions on which the parties agreed." (quotation marks and citation omitted)).

The Insurers seek summary judgment on the reformation claim, arguing that there is no evidence that they intended to cover claims for defective work by Nordic's subcontractors. However, Nordic has raised a genuine issue of fact as to this point. Nordic has introduced evidence demonstrating that insurers in general were covering such claims and suggesting that the Insurers did not initially intend to deny coverage based on Burlington. Additionally, Nordic paid a large premium for

30

"CONTRACTORS--SUBCONTRACTED WORK--IN CONNECTION WITH
CONSTRUCTION, RECONSTRUCTION, REPAIR OR ERECTION OF BUILDINGS
NOC." See ECF No. 1-1, PageID # 12.  Under these circumstances,
a reasonable jury could infer that, at the time the Policies were
issued, the Insurers meant to cover claims arising out of the
defective work of Nordic's subcontractors.

        The Insurers similarly fail to demonstrate entitlement
to summary judgment based on their "conscious ignorance"
argument.  The Insurers contend that Nordic bore the risk of
mistake by relying on Marsh, making Nordic "consciously ignorant"
of the details of the Policies.  This court need not determine
whether conscious ignorance on the part of Nordic means that
there can be no "mutual mistake" for purposes of reforming a
contract.  Nordic has raised a question of fact as to whether the
Insurers mistakenly believed that their Policies covered the
defective work of Nordic's subcontractors.

        D.    **Punitive Damages.**

        The SACC requests punitive damages, which may be
awarded when a plaintiff proves "by clear and convincing evidence
that the defendant has acted wantonly or oppressively or with
such malice as implies a spirit of mischief or criminal
indifference to civil obligations, or where there has been some
wilful misconduct or that entire want of care which would raise
the presumption of a conscious indifference to consequences."

31

<u>Masaki v. Gen. Motors Corp.</u>, 71 Haw 1, 16–17, 780 P.2d 566, 575 (1989).

The Insurers seek summary judgment with respect to the punitive damage request, arguing that Nordic lacks evidence of such wilful or wanton conduct.  Nordic responds by arguing that the conduct underlying its bad faith claim justifies punitive damages.  That is, Nordic argues that the Insurers adopted a strategy after the <u>Group Builders</u> decision to avoid having to pay for claims made that they had originally contemplated would be covered.  <u>See</u> Opposition at 37, ECF No. 233, PageID # 7712. However, as discussed above, the Insurers acted reasonably in challenging the existence of coverage, even assuming the Insurers changed their intent in light of <u>Group Builders</u>.  It may well be that Nordic has remedies for the other claims asserted in the SACC, but those other claims sound in ordinary negligence and do not, based on the SACC, involve conduct so egregious as to justify an award of punitive damages.

**E.   No Rule 56(d) Continuance is Warranted.**

Nordic argues that the court should continue the summary judgment motion with respect to the punitive damage issue because discovery is ongoing.  Pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, after a motion for summary judgment under Rule 56, "if a nonmovant shows by affidavit or declaration that, for some specified reasons, it cannot present

facts essential to justify its opposition, the court may:
(1) defer considering the motion or deny it; (2) allow time to
obtain affidavits or declarations or to take discovery; or
(3) issue any other appropriate order.  Fed. R. Civ. P. 56(d).
In 2010, FRCP Rule 56 was amended and the advisory committee
noted that "Subdivision (d) carries forward without substantial
change the provisions of former subdivision (f).  Fed. R. Civ. P.
56(d) advisory comm. nn.  Accordingly, the case law regarding
subdivision (f), prior to the amendments, applies.  Rule 56(d) of
the Federal Rules of Civil Procedure therefore permits a district
court to continue a summary judgment motion "upon a good faith
showing by affidavit that the continuance is needed to preclude
summary judgment."  California v. Campbell, 138 F.3d 772, 779
(9th Cir. 1998) (interpreting the former Rule 56(f) of the
Federal Rules of Civil Procedure).

        A party requesting a continuance bears the burden of
(1) filing a timely application that specifically identifies
relevant information; (2) demonstrating that there is some basis
to believe that the information sought exists; and
(3) establishing that such information is essential to resist the
summary judgment motion.  See Emp'rs Teamsters Local Nos. 175 &
505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1130 (9th
Cir. 2004) (citation omitted); accord Moss v. U.S. Secret Serv.,
572 F.3d 962, 966 n.3 (9th Cir. 2009) ("Rule 56([d]) requires a

party seeking postponement of a summary judgment motion to show
how additional discovery would preclude summary judgment and why
it cannot immediately provide specific facts demonstrating a
genuine issue of material fact." (punctuation, quotation marks,
and citation omitted)).  Because the court has assumed for
purposes of this motion that the Insurers changed their position
based on Group Builders, the requested continuance is
unnecessary.  This case was also filed more than two years ago,
and Nordic has not included in the record evidence establishing
its diligence in the discovery process on any matter relevant to
its Rule 56(d) request.

### F.   Marsh's Countermotion is Denied.

There is no dispute that Marsh acted as Nordic's
insurance broker.  Nordic has not to date disputed that any
negligence on Marsh's part should be imputed to Nordic in the
context of the dispute between Nordic and the Insurers.  Marsh
has filed a countermotion for summary judgment, arguing that, to
the extent the Insurers' Answer to the SACC asserts an
affirmative defense of contributory/comparative negligence
against Marsh, such a defense is improper because Marsh has not
asserted a claim against the Insurers.  The Insurers oppose the
countermotion, arguing that Marsh lacks standing to attack an
affirmative defense asserted only as to a claim by Nordic against
the Insurers.  For its part, Marsh has no claim against the

34

Insurers subject to any defense the Insurers might raise.  Both Marsh and the Insurers thus agree that the Insurers' affirmative defense is not being asserted against Marsh.  In other words, any affirmative defense raised by the Insurers in answering Nordic's counterclaim cannot possibly be something Marsh must litigate. Marsh's countermotion is therefore denied.

**V.        CONCLUSION.**

For the foregoing reasons, the court grants in part and denies in part the Insurers' motion for summary judgment.  To the extent the SACC asserts a bad faith tort and seeks punitive damages, summary judgment is granted in favor of the Insurers. In all other respects, the Insurers' motion for summary judgment is denied.  Marsh's countermotion is also denied.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 22, 2013.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Illinois National Insurance Company, et al. v. Nordic PCL Construction, Inc., Civil No. 11-00515 SOM/KSC; ORDER GRANTING INSURERS' MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE SECOND AMENDED COUNTERCLAIM'S BAD FAITH CLAIM AND PUNITIVE DAMAGE REQUEST AND DENYING REMAINDER OF MOTION FILED BY INSURERS; ORDER DENYING MARSH'S COUNTERMOTION FOR SUMMARY JUDGMENT